```
1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3

    BANCO SAN JUAN INTERNACIONAL    )
4   INC.,                          )
                                    )
5   --------------------Plaintiff, )
                                    )Case No.
6          vs.                      )22-1315-LPS
                                    )
7   PETROLEOS DE VENEZUELA S.A. et  )
    al.,                           )
8   --------------------Defendant.  )

9

10

       TRANSCRIPT OF MOTION TO DISMISS OR TRANSFER
11                         VENUE

12

13          MOTION TO DISMISS OR TRANSFER VENUE had

14   before the Honorable Leonard P. Stark,

15   U.S.C.A.J., in Courtroom 4A on the 30th of

16   March, 2023.

17

18                      APPEARANCES

19

20          MCCOLLOM D'EMILIO SMITH UEBLER LLC
                 BY:  THOMAS UEBLER, ESQ.
21
                        -and-
22
            WINSTON & STRAWN LLP
23               BY:  IMAD KHAN, ESQ.

24                          Counsel for Plaintiff

25
```

1          (Appearances continued.)

2

3          HEYMAN ENERIO GATTUSO & HIRZEL, LLP
              BY:  SAMUEL HIRZEL, II, ESQ.

4                        -and-

5          CURTIS MALLET-PREVOST COLT & MOSLE LLP
              BY:  JUAN PERLA, ESQ.

6                   KEVIN MEEHAN, ESQ.
                    AUBRE DEAN, ESQ.

7
                              Counsel for Defendant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  I'm going to have you put

2     your appearances on the record for us, please.

3          MR. UEBLER:  Good afternoon, Your

4     Honor.  Tom Uebler from McCollom, D'Emilio,

5     Smith, and Uebler along with Imad Khan from

6     Winston and Strawn on behalf of Banco San Juan.

7          THE COURT:  Good afternoon to both of

8     you.  Thank you.

9          MR. KHAN:  Good afternoon, Your

10    Honor.

11          MR. HIRZEL:  Good afternoon.  Sam

12    Hirzel again from Heyman Enerio for PDVSA.  I

13    have Kevin Meehan, Aubre Dean, and Juan Perla

14    with me from Curtis Mallet.  Mr. Meehan and

15    Mr. Perla are admitted *pro hac vice*.

16          THE COURT:  All right.  Thank you.

17          So we are here for argument on the

18    defendant's motion to dismiss or to transfer

19    venue.  I apologize for running late today.  I

20    think you know I'm having a bit of a day here,

21    but thank you for your patience.  I didn't

22    allocate a specific amount of time, but I don't

23    think we're going to need a lot of time.

24          What I want to do is start on the venue

25    question.  It seems to me that both sides agree

1      that if I find this is not a proper venue, then

2      I can, maybe must, should just send the whole

3      thing to the DC District Court.  So we may get

4      into the other issues, but I do want to focus

5      on that first.

6           Since it is Banco's motion -- I'm calling

7      you Banco.  Forgive me.  I'll call you

8      something else if you like -- why don't you

9      come up first and let's talk about venue

10     briefly.

11          And principally, I want to -- it's

12     PDVSA's motion, but principally, I want to talk

13     to the plaintiff about whether there is a

14     meaningful distinction from my earlier

15     decision.  So forget my confusion, and we'll

16     hear from the defendants briefly on venue.

17          MR. MEEHAN:  Your Honor, Kevin Meehan

18     of Curtis Millet for Defendants.

19          So, Your Honor, we agree that the venue

20     issue here is sort of a standalone issue that

21     you can decide without reaching any of the

22     other issues in this case.  In terms of venue,

23     it's governed by the Foreign Sovereign

24     Immunities Act.  There's no dispute here

25     there's no connection between Delaware and this

1     case, and there are two arguments being made

2     here by Plaintiff on venue.

3          The first is they have these UK judgments

4     that they're seeking to enforce pursuant to the

5     Uniform Recognition Act, and they -- they hope

6     to get a judgment of this Court and hope to

7     enforce this judgment against the PDVSA shares.

8     That's not the basis for venue under the FSIA.

9     The FSIA provides that the property in the

10    district has to be the subject matter of the

11    action.  It has to be an *in rem* action, an

12    action to determine title of right and

13    property.

14          In fact, this sort of issue has been

15    decided in a few other cases that I'd point you

16    to, the first one being the *Palladian Partners*

17    case.  It's 2022 U.S. District Lexis 200875.

18    That's a Southern District of New York case,

19    very much similar.  A plaintiff came in with

20    with two German judgments it wanted to

21    recognize in the United States.  It was based

22    on the allegation there was property they

23    ultimately want to execute upon in New York,

24    and the New York court found that's not

25    sufficient, that these courts don't want to

1    extend the language of the FSIA beyond property

2    that is subject of the action.

3         Similar case cited in the *Palladian* case

4    is the *Commissions versus Congo*.  Again,

5    another Southern District of New York case

6    where you had a UK judgment against the Congo,

7    same thing there because they want to go after

8    assets in that district, and the Court said

9    that's not the basis for venue.  Another case

10   that we've cited in our brief is *Esmani* says

11   that -- a similar situation.  It was a state

12   court judgment they're trying to enforce in

13   California, California federal court, and the

14   court, again, said you can't come in here and

15   assert venue based on your desire that you

16   eventually get a judgment that you want to

17   enforce against property in this district.

18        And that's essentially what was happening

19   in the *Saint-Gobain* case before Your Honor a

20   few years ago when they had come in and filed a

21   plenary action to enforce an arbitrable award

22   in hopes of getting attachment of PDVSA shares.

23   That's what the plaintiff is doing here, but

24   that's not a basis for venue.

25             THE COURT:  F(1) prong.  Talk about

1       F(3) as well.

2                MR. MEEHAN:  So F(3), and what their

3       argument here is that PDVSA is doing business

4       in Delaware but it owes the PDVA shares.  This

5       is one where Your Honor squarely confronts that

6       argument in the *Saint-Gobain* case.

7       *Saint-Gobain* made the argument that PDVSA was

8       doing business in Delaware by virtue of its

9       ownership and exercise of shareholder rights in

10      the PDVA shares and that PDVSA was the alter

11      ego of Venezuela and there were -- when you

12      take those two arguments together, that would

13      provide a basis for venue over the Republic.

14      That Court found they were wrong on both

15      accounts.

16                With respect to doing business, this

17      Court applies the standard that's been applied

18      by other courts, most prominently, I believe,

19      it's the *Vent* case in New Jersey where the

20      standard for doing business is there has to be

21      activity that's sufficiently localized that,

22      effectively, the defendant would be probably

23      required to register as a foreign corporation

24      in the district.

25                And we would argue here that it's the

1      same sort of allegations of shareholder.  Mere

2      ownership of shares and the acts of appointing

3      people to boards, things like that, that's not

4      sufficiently localized.  Some courts have

5      required a physical presence.  There's

6      obviously no physical presence here, and our

7      sort of feeling here is this is sort of a rerun

8      of the *Saint-Gobain* case.

9                THE COURT:  I'm sure you're familiar

10     with the ruling I issued with respect to other

11     creditors last week on alter ego issues, or

12     hopefully you are.  If you had a chance to look

13     at that, do you think it has any implications

14     for the "doing business" prong?

15                MR. MEEHAN:  I don't think so, Your

16     Honor.  First off, this is not an alter ego

17     case.  The defendants here are PDVSA.  The

18     Republic's not involved.  In terms of the

19     exercise of shareholder rights, it's the same

20     sort of things that were being alleged in the

21     *Saint-Gobain* case where appointing board

22     members, doing things like that, exercising

23     rights of that shares.  There's another case

24     that we cited in our brief.  That was a

25     situation where you had a plaintiff suing.  It

1     was a Chinese state-owned oil company, and the

2     venue was proper because that oil company had a

3     U.S. subsidiary incorporated in the district.

4     And again, similar to Your Honor's decision,

5     found that there was no basis to assert venue

6     of the "doing business" prong solely on the

7     ownership of the shares of subsidiary.

8          THE COURT:  I think that's it on

9     venue.  Let's save your argument on the other

10     issues if I need it.

11          MR. MEEHAN:  Thank you, Your Honor.

12          THE COURT:  We'll hear from Banco,

13     whatever you would like me to call you.

14          MR. UEBLER:  Good morning, Your

15     Honor.  Banco is just fine.

16          To respond to your question about venue,

17     in the event that it's not in this district,

18     we're in agreement that DC would be the proper

19     venue, but we do think that venue is proper

20     here.  And we disagree that it's undisputed

21     that our claim has no connection to Delaware.

22          We also think this is different from the

23     circumstances you addressed before in the

24     *Saint-Gobain* case.  PDVSA in that case was

25     dismissed on other grounds, for service of

1   process, and the question addressed there was

2   whether Venezuela itself, the government, was

3   doing business in Delaware.  The distinction in

4   this case, Your Honor, is that PDVSA is at the

5   top of a chain of Delaware entities that solely

6   owns and controls the entire corporate

7   structure all the way down to CITGO.

8         This is more than owning stock in a

9   Delaware company.  This is electing and

10  installing directors.  This is filing tax

11  returns here in Delaware.  We heard a minute

12  ago in the papers we read that the standard is

13  as if you're doing business and you would need

14  to register to do business in the district.  We

15  have more here.  Through the corporate chain,

16  we have PDVSA at the top all the way down to

17  having a corporate existence and filing tax

18  returns in Delaware.

19        THE COURT:  Isn't it meaningful that

20  they had to go through the corporate chain?

21  The party you sued, the PDVSA, they don't do

22  those things other than hold the shares and

23  ultimately exercise their rights through the

24  chain.

25        MR. UEBLER:  In these circumstances,

1    Your Honor, I don't believe there's a

2    distinction there.  It's all controlled

3    directly.

4            THE COURT:  If I adhere to the

5    standard I have adopted in the *Saint-Gobain*

6    case, which I think I took from a District of

7    New Jersey case, have you shown that venue is

8    proper as in under F(3) for doing business?

9    Have you shown that PDVSA has activities within

10   Delaware that is such that its business has

11   become localized and is in operation within

12   this district so that Delaware would probably

13   require the foreign corporation to be licensed?

14           MR. UEBLER:  We've shown ownership of

15   the corporate structure and direct control.  We

16   haven't shown business operations beyond that,

17   so in our view, the ownership itself and

18   control of CITGO, although indirect, satisfies

19   that standard or should satisfy that standard.

20   But we're relying entirely on the ownership and

21   control of CITGO.

22           THE COURT:  Okay.  What about the

23   F(1) grounds?  Can you address that.

24           MR. UEBLER:  Sure.  The F(1) grounds,

25   again, we're relying on the stock here in

```
 1          Delaware that we seek to attach eventually
 2          after the judgment is domesticated.
 3                   THE COURT:  But its relevance is that
 4          that is the property you would seek to execute
 5          on.  It really has no other relevance under
 6          F(1); is that right?
 7                   MR. UEBLER:  That's correct.
 8                   THE COURT:  And isn't it correct that
 9          there are cases that say that's not enough
10          under F(1)?
11                   MR. UEBLER:  There are some cases
12          that say that, yes.
13                   THE COURT:  Have you cited any cases
14          to the contrary?
15                   MR. UEBLER:  No.
16                   THE COURT:  There's also another
17          defendant, I think, here, PPSA; is that right?
18                   MR. UEBLER:  That's correct.
19                   THE COURT:  Do you make any showing
20          under F(1) or F(3) with respect to PPSA?
21                   MR. UEBLER:  We don't, Your Honor.
22          We view those parties as being in privity
23          through their contractural arrangement with our
24          client and the creditors we have own stock or
25          controls a Delaware corporation.
```

1          THE COURT:  So my understanding, but

2     please correct me if you have authority for a

3     different view, is that I have to do the venue

4     analysis separately for the two parties you

5     chose to sue.  Do you agree with that?

6          MR. UEBLER:  That's our understanding

7     as well, Your Honor, and if you were to find

8     that venue is proper for one entity, PDVSA, but

9     not PPSA, our position would be that PDVSA

10    should stay and the claim against PPSA should

11    be transferred.

12          THE COURT:  But then I think I have

13    to confront the question of severance, and it

14    certainly doesn't seem to promote judicial

15    efficiency if I were to say, as I think I

16    probably have to based on your answers, that

17    PPSA, the only proper venue is DC, so the DC

18    judge is going to have this case.  Is there any

19    reason I can't or shouldn't consider, then,

20    issues of judicial efficiency and that even if

21    this was a proper venue for PDVSA, DC is also

22    indisputably a proper venue, and since he's

23    already got a related case, I should just send

24    it there?  Would you object to that analysis?

25          MR. UEBLER:  I don't object to that

1        analysis.  I would say given that we are here

2        and that the sales procedure is going forward

3        in this district, there are also efficiencies

4        to be gained by keeping at least part of this

5        case here in this district.  But with respect

6        to your question about severance as to the

7        domestication claim, Your Honor, I don't

8        dispute your analysis.

9                  THE COURT:  I assume, of course,

10       depending on what happens with the sales

11       procedure, you may try to come back here anyway

12       if I transfer you and you succeed in getting

13       your judgment.

14                  MR. UEBLER:  We would prefer to stay

15       here, but we would be back, Your Honor.

16                  THE COURT:  Okay.  All right.  I

17       think, based on your answers, I have what I

18       need on venue.  I don't think I'm going to be

19       reaching any other issues.  Is there anything

20       else you wanted to say on venue?

21                  MR. UEBLER:  No, Your Honor.  Thank

22       you.

23                  THE COURT:  Mr. Meehan, do you want

24       to come back and add anything?

25                  I guess one question I have for you is

1    they evidently have evidence that PDVSA filed

2    tax returns in Delaware.  I'm not sure I saw

3    that in the briefing, but in any event, does

4    that --

5           MR. MEEHAN:  Your Honor, you

6    anticipated what I was going to say out of the

7    gate.  This is the first I'm hearing about any

8    payment of taxes by PDVSA in Delaware.  I've

9    never heard of it.  There's no evidence of it,

10    no allegations in the complaint.  The same

11    thing about the corporate chain.  There are

12    shares here.  My understanding is CITGO, their

13    headquarters and operations are in Houston.

14         And then the last point that I would say

15    about the efficiency matter, that's sort of an

16    issue that was addressed by the Second District

17    in the *Mobile* case in which the Court found

18    that the requirements of FSIA can't be

19    dispensed with because it's going to be fast or

20    more efficient; otherwise, you can't just toss

21    it to the side.

22           THE COURT:  Okay.  Thank you.

23       Did you have something you wanted to add?

24           MR. UEBLER:  Your Honor, I wanted to

25    clarify my comment.  I was referring to

1      Secretary of State corporate franchise tax

2      filings that Delaware corporations make every

3      year as an act by entities within the chain.

4                  THE COURT:  Not PDVSA per se.

5                  MR. UEBLER:  That's correct.

6                  THE COURT:  An entity lower down the

7      chain.

8                  MR. UEBLER:  Correct.

9                  THE COURT:  My mistake.

10           Thank you, Mr. Meehan.  Anything else?

11                  MR. MEEHAN:  Not from me, Your Honor.

12                  THE COURT:  All right.  I'm going to

13      go ahead and rule on your motion.  I don't

14      think there will be any surprise on my ruling.

15      The motion to dismiss or transfer is granted to

16      the limited extent that I am going to transfer

17      this action to a proper venue, an indisputably

18      proper venue being the District of the District

19      of Columbia.  I find that venue is improper

20      here in Delaware over both defendants, PDVSA

21      and PPSA.  I am not reaching any other aspect

22      of the motion filed by the defendants.

23           I will have, in a second, just a tiny bit

24      more analysis as to why I think this in

25      Delaware is improperly.  I also think new

1    arguments that were made by the defendants in

2    their reply brief in support of their motion,

3    that motion to strike, is denied as moot.

4    There were no allegedly new arguments in the

5    reply brief that go to venue.  Venue is the

6    only issue I'm reaching, and I'm transferring

7    the case.

8         For all those reasons, the plaintiff's

9    motion is moot and need not be further briefed.

10        Just briefly, why venue is improper here.

11   I do recognize that burden is on the defendants

12   to establish that venue in Delaware is

13   improper, but I find they've met their burden

14   on the record before me.  And essentially, they

15   did it by rebutting both of the grounds that

16   the plaintiff asserted for why venue is proper

17   here.  28 U.S.C. Section 1391 F(1) is the first

18   ground.  I agree with the defendants that it

19   does not apply or is not satisfied here because

20   none of the property that PDVSA owns in

21   Delaware is connected to the underlying action.

22        We don't have in front of us in this case

23   an *in rem* action.  We have, instead, an action

24   to enter judgment.  It's not a property action.

25   The fact that Banco ultimately intends to try

1    to execute on a judgment if it gets a judgment,

2    intends ultimately to execute on property that

3    may be found here in the District of Delaware,

4    is not a sufficient basis to meet the

5    requirements of 1391 F(1).  It does not allow

6    the plaintiff to skip a step in finding a

7    proper venue to obtain a U.S. judgment first

8    and then perhaps register it here.  I think

9    that ruling is consistent with, although maybe

10   not mandated by, what I said in *Saint-Gobain*

11   and also consistent with the other Courts'

12   decisions that have been cited by the

13   defendants.

14       The other grounds argued by the

15   plaintiffs, 1391 F(3), also does not apply or

16   is not satisfied here.  I think my holding in

17   *Saint-Gobain* is directly applicable, and I've

18   not heard any persuasive argument for why I

19   should view the situation differently here.

20   Essentially, the argument from the plaintiffs

21   is that PDVSA owns the shares of PDVH and,

22   ultimately, through the corporate chain, the

23   business of CITGO.  That argument, however, is

24   not, in my mind, an argument or not evidence

25   that PDVSA the company that is actually sued

1     here, is actually doing business in Delaware.

2     No cases have been cited adopting that view.  I

3     myself have rejected that view previously in

4     *Saint-Gobain*.  Instead of accepting what is,

5     essentially, the same view, I adopted the view

6     of the New Jersey court, which construed doing

7     business for these purposes, as I discussed

8     during argument, that PDVSA's activities here

9     in Delaware would have to be such that its

10    business is localized and it's in operation

11    here such that Delaware would probably require

12    it to be registered as a foreign corporation or

13    licensed as a condition precedent to doing that

14    business, and there's no evidence here that

15    that standard is met.

16         It's undisputed, I think, that there's no

17    physical presence of PDVSA here in Delaware.

18    They're not licensed to do business here and,

19    therefore, and for all the reasons I've said,

20    they're not doing business in Delaware for

21    purposes of 1391 F(3).  I don't think it's a

22    meaningful distinction for these purposes that

23    the *Saint-Gobain* case was brought against

24    Venezuela and this one is brought against

25    PDVSA.  I think all the purported distinctions

1   made by the plaintiffs from my previous ruling

2   in that related case were for that case that

3   issued -- that raised a similar issue, I think

4   they're unavailing.

5         Further, I would add really everything I

6   just said is about PDVSA.  Plaintiffs candidly

7   admit they don't make allegations against the

8   other defendant here, PPSA, so it does follow,

9   in my mind, that I really have no choice but to

10   transfer the PPSA case to the DC court.  And

11   once I do that, I think the issue of judicial

12   efficiency, notwithstanding all the litigation

13   I have in front of me in connection with the

14   sales process order, I still think me

15   proceeding in this particular action against

16   PDVSA while a judge in DC is proceeding on the

17   identical, essentially, facts against PPSA

18   would undermine the Court's interest in

19   judicial efficiency and increase the burden on

20   the federal judiciary.

21         So I deny -- I suppose I grant, sorry,

22   grant the motion to transfer on that grounds as

23   well.  But fundamentally, it's not been shown

24   that this venue is proper for this action, so I

25   will be transferring it.

1          I do want the parties to work together

2     and give me a proposed form of order, ideally

3     Monday, that effectuates my limited grant based

4     on improper venue and orders this action

5     against both defendants to be transferred to

6     the DC court.

7          Any questions about anything I've said or

8     anything else we should discuss while we're

9     together, Mr. Meehan?

10               MR. MEEHAN:  Nothing from PDVSA.

11               THE COURT:  Mr. Uebler?

12               MR. UEBLER:  Nothing from me, Your

13     Honor.

14               THE COURT:  All right.  We'll be in

15     recess.  Thank you for the arguments.

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2     STATE OF DELAWARE          )
                                 ) ss:
3     COUNTY OF NEW CASTLE       )

4          I, Deanna L. Warner, a Certified

5     Shorthand Reporter, do hereby certify that as

6     such Certified Shorthand Reporter, I was

7     present at and reported in Stenotype shorthand

8     the above and foregoing proceedings in Case

9     Number 22-1315-LPS, *BANCO SAN JUAN*

10    *INTERNACIONAL INC. Vs. PETROLEOS DE VENEZUELA*

11    *S.A. et al.*, heard on March 30, 2023.

12         I further certify that a transcript of

13    my shorthand notes was typed and that the

14    foregoing transcript, consisting of 22

15    typewritten pages, is a true copy of said

16    **MOTION TO DISMISS OR TRANSFER VENUE**.

17         **SIGNED**, **OFFICIALLY SEALED**, and **FILED**

18    with the Clerk of the District Court, NEW

19    CASTLE County, Delaware, this 4th day of April,

20    2023.

21

22                              _____
                                Deanna L. Warner, CSR, #1687
23                              Speedbudget Enterprises, LLC

24

25

# #

**#1687** [1] - 22:22

# 1

**1391** [4] - 17:17, 18:5, 18:15, 19:21

# 2

**200875** [1] - 5:17
**2022** [1] - 5:17
**2023** [3] - 1:16, 22:11, 22:20
**22** [1] - 22:14
**22-1315-LPS** [2] - 1:6, 22:9
**28** [1] - 17:17

# 3

**30** [1] - 22:11
**30th** [1] - 1:15

# 4

**4A** [1] - 1:15
**4th** [1] - 22:19

# A

**accepting** [1] - 19:4
**accounts** [1] - 7:15
**act** [3] - 4:24, 5:5, 16:3
**action** [13] - 5:11, 5:12, 6:2, 6:21, 16:17, 17:21, 17:23, 17:24, 20:15, 20:24, 21:4
**activities** [2] - 11:9, 19:8
**activity** [1] - 7:21
**acts** [1] - 8:2
**add** [3] - 14:24, 15:23, 20:5
**address** [1] - 11:23
**addressed** [3] - 9:23, 10:1, 15:16
**adhere** [1] - 11:4
**admit** [1] - 20:7
**admitted** [1] - 3:15
**adopted** [2] - 11:5, 19:5
**adopting** [1] - 19:2
**afternoon** [4] - 3:3,

3:7, 3:9, 3:11
**ago** [2] - 6:20, 10:12
**agree** [4] - 3:25, 4:19, 13:5, 17:18
**agreement** [1] - 9:18
**ahead** [1] - 16:13
**al** [2] - 1:7, 22:11
**allegation** [1] - 5:22
**allegations** [3] - 8:1, 15:10, 20:7
**alleged** [1] - 8:20
**allegedly** [1] - 17:4
**allocate** [1] - 3:22
**allow** [1] - 18:5
**alter** [3] - 7:10, 8:11, 8:16
**amount** [1] - 3:22
**analysis** [5] - 13:4, 13:24, 14:1, 14:8, 16:24
**AND** [1] - 1:2
**answers** [2] - 13:16, 14:17
**anticipated** [1] - 15:6
**anyway** [1] - 14:11
**apologize** [1] - 3:19
**APPEARANCES** [1] - 1:18
**appearances** [1] - 3:2
**Appearances** [1] - 2:1
**applicable** [1] - 18:17
**applied** [1] - 7:17
**applies** [1] - 7:17
**apply** [2] - 17:19, 18:15
**appointing** [2] - 8:2, 8:21
**April** [1] - 22:19
**arbitrable** [1] - 6:21
**argue** [1] - 7:25
**argued** [1] - 18:14
**argument** [10] - 3:17, 7:3, 7:6, 7:7, 9:9, 18:18, 18:20, 18:23, 18:24, 19:8
**arguments** [5] - 5:1, 7:12, 17:1, 17:4, 21:15
**arrangement** [1] - 12:23
**aspect** [1] - 16:21
**assert** [2] - 6:15, 9:5
**asserted** [1] - 17:16
**assets** [1] - 6:8
**assume** [1] - 14:9
**attach** [1] - 12:1
**attachment** [1] - 6:22
**AUBRE** [1] - 2:6
**Aubre** [1] - 3:13

**authority** [1] - 13:2
**award** [1] - 6:21

# B

**BANCO** [2] - 1:3, 22:9
**Banco** [8] - 3:6, 4:7, 9:12, 9:15, 17:25
**Banco's** [1] - 4:6
**based** [5] - 5:21, 6:15, 13:16, 14:17, 21:3
**basis** [6] - 5:8, 6:9, 6:24, 7:13, 9:5, 18:4
**become** [1] - 11:11
**behalf** [1] - 3:6
**between** [1] - 4:25
**beyond** [2] - 6:1, 11:16
**bit** [2] - 3:20, 16:23
**board** [1] - 8:21
**boards** [1] - 8:3
**brief** [4] - 6:10, 8:24, 17:2, 17:5
**briefed** [1] - 17:9
**briefing** [1] - 15:3
**briefly** [3] - 4:10, 4:16, 17:10
**brought** [2] - 19:23, 19:24
**burden** [3] - 17:11, 17:13, 20:19
**business** [19] - 7:3, 7:8, 7:16, 7:20, 8:14, 9:6, 10:3, 10:13, 10:14, 11:8, 11:10, 11:16, 18:23, 19:1, 19:7, 19:10, 19:14, 19:18, 19:20
**BY** [1] - 1:20

# C

**California** [2] - 6:13
**candidly** [1] - 20:6
**case** [30] - 4:22, 5:1, 5:17, 5:18, 6:3, 6:5, 6:9, 6:19, 7:6, 7:19, 8:8, 8:17, 8:21, 8:23, 9:24, 10:4, 11:6, 11:7, 13:18, 13:23, 14:5, 15:17, 17:7, 17:22, 19:23, 20:2, 20:10
**Case** [2] - 1:5, 22:8
**cases** [5] - 5:15, 12:9, 12:11, 12:13, 19:2
**CASTLE** [2] - 22:3, 22:19

**certainly** [1] - 13:14
**Certified** [2] - 22:4, 22:6
**certify** [2] - 22:5, 22:12
**chain** [8] - 10:5, 10:15, 10:20, 10:24, 15:11, 16:3, 16:7, 18:22
**chance** [1] - 8:12
**Chinese** [1] - 9:1
**choice** [1] - 20:9
**chose** [1] - 13:5
**circumstances** [2] - 9:23, 10:25
**cited** [6] - 6:3, 6:10, 8:24, 12:13, 18:12, 19:2
**CITGO** [5] - 10:7, 11:18, 11:21, 15:12, 18:23
**claim** [3] - 9:21, 13:10, 14:7
**clarify** [1] - 15:25
**Clerk** [1] - 22:18
**client** [1] - 12:24
**COLT** [1] - 2:5
**Columbia** [1] - 16:19
**comment** [1] - 15:25
**commissions** [1] - 6:4
**company** [4] - 9:1, 9:2, 10:9, 18:25
**complaint** [1] - 15:10
**condition** [1] - 19:13
**confront** [1] - 13:13
**confronts** [1] - 7:5
**confusion** [1] - 4:15
**Congo** [2] - 6:4, 6:6
**connected** [1] - 17:21
**connection** [3] - 4:25, 9:21, 20:13
**consider** [1] - 13:19
**consistent** [2] - 18:9, 18:11
**consisting** [1] - 22:14
**construed** [1] - 19:6
**continued** [1] - 2:1
**contractural** [1] - 12:23
**contrary** [1] - 12:14
**control** [3] - 11:15, 11:18, 11:21
**controlled** [1] - 11:2
**controls** [2] - 10:6, 12:25
**copy** [1] - 22:15
**corporate** [8] - 10:6, 10:15, 10:17, 10:20, 11:15, 15:11, 16:1, 18:22

**corporation** [4] - 7:23, 11:13, 12:25, 19:12
**corporations** [1] - 16:2
**correct** [6] - 12:7, 12:8, 12:18, 13:2, 16:5, 16:8
**counsel** [1] - 1:24
**Counsel** [1] - 2:7
**COUNTY** [1] - 22:3
**County** [1] - 22:19
**course** [1] - 14:9
**court** [4] - 4:3, 5:24, 6:12, 6:13, 6:14, 19:6, 20:10, 21:6
**COURT** [28] - 1:1, 3:1, 3:7, 3:16, 6:25, 8:9, 9:8, 9:12, 10:19, 11:4, 11:22, 12:3, 12:8, 12:13, 12:16, 12:19, 13:1, 13:12, 14:9, 14:16, 14:23, 15:22, 16:4, 16:6, 16:9, 16:12, 21:11, 21:14
**Court** [6] - 5:6, 6:8, 7:14, 7:17, 15:17, 22:18
**Court's** [1] - 20:18
**Courtroom** [1] - 1:15
**courts** [3] - 5:25, 7:18, 8:4
**Courts'** [1] - 18:11
**creditors** [2] - 8:11, 12:24
**CSR** [1] - 22:22
**curtis** [1] - 4:18
**CURTIS** [1] - 2:5
**Curtis** [1] - 3:14

# D

**D'EMILIO** [1] - 1:20
**D'Emilio** [1] - 3:4
**DC** [8] - 4:3, 9:18, 13:17, 13:21, 20:10, 20:16, 21:6
**DE** [2] - 1:7, 22:10
**DEAN** [1] - 2:6
**dean** [1] - 3:13
**Deanna** [2] - 22:4, 22:22
**decide** [1] - 4:21
**decided** [1] - 5:15
**decision** [2] - 4:15, 9:4
**decisions** [1] - 18:12
**defendant** [3] - 7:22, 12:17, 20:8

**Defendant** [2] - 1:8, 2:7
**defendant's** [1] - 3:18
**defendants** [10] - 4:16, 4:18, 8:17, 16:20, 16:22, 17:1, 17:11, 17:18, 18:13, 21:5
**DELAWARE** [2] - 1:2, 22:2
**Delaware** [27] - 4:25, 7:4, 7:8, 9:21, 10:3, 10:5, 10:9, 10:11, 10:18, 11:10, 11:12, 12:1, 12:25, 15:2, 15:8, 16:2, 16:20, 16:25, 17:12, 17:21, 18:3, 19:1, 19:9, 19:11, 19:17, 19:20, 22:19
**denied** [1] - 17:3
**deny** [1] - 20:21
**desire** [1] - 6:15
**determine** [1] - 5:12
**different** [2] - 9:22, 13:3
**differently** [1] - 18:19
**direct** [1] - 11:15
**directly** [2] - 11:3, 18:17
**directors** [1] - 10:10
**disagree** [1] - 9:20
**discuss** [1] - 21:8
**discussed** [1] - 19:7
**DISMISS** [3] - 1:10, 1:13, 22:16
**dismiss** [2] - 3:18, 16:15
**dismissed** [1] - 9:25
**dispensed** [1] - 15:19
**dispute** [2] - 4:24, 14:8
**distinction** [4] - 4:14, 10:3, 11:2, 19:22
**distinctions** [1] - 19:25
**DISTRICT** [2] - 1:1, 1:2
**district** [18] - 4:3, 5:10, 5:17, 5:18, 6:5, 6:8, 6:17, 7:24, 9:3, 9:17, 10:14, 11:6, 11:12, 14:3, 14:5, 15:16, 16:18, 18:3
**District** [2] - 16:18, 22:18
**domesticated** [1] - 12:2
**domestication** [1] - 14:7
**down** [3] - 10:7, 10:16, 16:6
**during** [1] - 19:8

**E**

**effectively** [1] - 7:22
**effectuates** [1] - 21:3
**efficiencies** [1] - 14:3
**efficiency** [5] - 13:15, 13:20, 15:15, 20:12, 20:19
**efficient** [1] - 15:20
**ego** [3] - 7:11, 8:11, 8:16
**electing** [1] - 10:9
**ENERIO** [1] - 2:2
**Enerio** [1] - 3:12
**enforce** [5] - 5:4, 5:7, 6:12, 6:17, 6:21
**enter** [1] - 17:24
**Enterprises** [1] - 22:23
**entire** [1] - 10:6
**entirely** [1] - 11:20
**entities** [2] - 10:5, 16:3
**entity** [2] - 13:8, 16:6
**Esmani** [1] - 6:10
**ESQ** [6] - 1:20, 1:23, 2:3, 2:5, 2:6, 2:6
**essentially** [5] - 6:18, 17:14, 18:20, 19:5, 20:17
**establish** [1] - 17:12
**et** [2] - 1:7, 22:11
**event** [2] - 9:17, 15:3
**eventually** [2] - 6:16, 12:1
**evidence** [4] - 15:1, 15:9, 18:24, 19:14
**evidently** [1] - 15:1
**execute** [4] - 5:23, 12:4, 18:1, 18:2
**exercise** [3] - 7:9, 8:19, 10:23
**exercising** [1] - 8:22
**existence** [1] - 10:17
**extend** [1] - 6:1
**extent** [1] - 16:16

**F**

**F(1** [7] - 6:25, 11:23, 11:24, 12:6, 12:10, 12:20, 17:17
**F(1)** [1] - 18:5
**F(3** [5] - 7:1, 7:2, 11:8, 12:20, 18:15

**F(3)** [1] - 19:21
**fact** [2] - 5:14, 17:25
**facts** [1] - 20:17
**familiar** [1] - 8:9
**fast** [1] - 15:19
**federal** [2] - 6:13, 20:20
**few** [2] - 5:15, 6:20
**FILED** [1] - 22:17
**filed** [3] - 6:20, 15:1, 16:22
**filing** [2] - 10:10, 10:17
**filings** [1] - 16:2
**fine** [1] - 9:15
**first** [8] - 4:5, 4:9, 5:3, 5:16, 8:16, 15:7, 17:17, 18:7
**focus** [1] - 4:4
**follow** [1] - 20:8
**FOR** [1] - 1:2
**foregoing** [2] - 22:8, 22:14
**foreign** [4] - 4:23, 7:23, 11:13, 19:12
**forget** [1] - 4:15
**forgive** [1] - 4:7
**form** [1] - 21:2
**forward** [1] - 14:2
**franchise** [1] - 16:1
**front** [2] - 17:22, 20:13
**FSIA** [4] - 5:8, 5:9, 6:1, 15:18
**fundamentally** [1] - 20:23

**G**

**gained** [1] - 14:4
**gate** [1] - 15:7
**GATTUSO** [1] - 2:2
**German** [1] - 5:20
**given** [1] - 14:1
**Gobain** [11] - 6:19, 7:6, 7:7, 8:8, 8:21, 9:24, 11:5, 18:10, 18:17, 19:4, 19:23
**governed** [1] - 4:23
**government** [1] - 10:2
**grant** [3] - 20:21, 20:22, 21:3
**granted** [1] - 16:15
**ground** [1] - 17:18
**grounds** [6] - 9:25, 11:23, 14:24, 17:15, 18:14, 20:22
**guess** [1] - 14:25

**H**

**hac** [1] - 3:15
**headquarters** [1] - 15:13
**hear** [2] - 4:16, 9:12
**heard** [4] - 10:11, 15:9, 18:18, 22:11
**hearing** [1] - 15:7
**hereby** [1] - 22:5
**HEYMAN** [1] - 2:2
**Heyman** [1] - 3:12
**HIRZEL** [3] - 2:2, 2:3, 3:11
**Hirzel** [1] - 3:12
**hold** [1] - 10:22
**holding** [1] - 18:16
**Honor** [20] - 3:4, 3:10, 4:17, 4:19, 6:19, 7:5, 8:16, 9:11, 9:15, 10:4, 11:1, 12:21, 13:7, 14:7, 14:15, 14:21, 15:5, 15:24, 16:11, 21:13
**Honor's** [1] - 9:4
**Honorable** [1] - 1:14
**hope** [2] - 5:5, 5:6
**hopefully** [1] - 8:12
**hopes** [1] - 6:22
**Houston** [1] - 15:13

**I**

**ideally** [1] - 21:2
**identical** [1] - 20:17
**II** [1] - 2:3
**IMAD** [1] - 1:23
**Imad** [1] - 3:5
**immunities** [1] - 4:24
**implications** [1] - 8:13
**improper** [4] - 16:19, 17:10, 17:13, 21:4
**improperly** [1] - 16:25
**IN** [2] - 1:1, 1:2
**INC** [2] - 1:4, 22:10
**incorporated** [1] - 9:3
**increase** [1] - 20:19
**indirect** [1] - 11:18
**indisputably** [2] - 13:22, 16:17
**installing** [1] - 10:10
**instead** [2] - 17:23, 19:4
**intends** [2] - 17:25, 18:2
**interest** [1] - 20:18
**INTERNACIONAL** [2] - 1:3, 22:10

**involved** [1] - 8:18
**issue** [7] - 4:20, 5:14, 15:16, 17:6, 20:3, 20:11
**issued** [2] - 8:10, 20:3
**issues** [6] - 4:4, 4:22, 8:11, 9:10, 13:20, 14:19
**itself** [2] - 10:2, 11:17

**J**

**Jersey** [3] - 7:19, 11:7, 19:6
**JUAN** [3] - 1:3, 2:5, 22:9
**Juan** [2] - 3:6, 3:13
**judge** [2] - 13:18, 20:16
**judgment** [11] - 5:6, 5:7, 6:6, 6:12, 6:16, 12:2, 14:13, 17:24, 18:1, 18:7
**judgments** [2] - 5:3, 5:20
**judicial** [4] - 13:14, 13:20, 20:11, 20:19
**judiciary** [1] - 20:20

**K**

**keeping** [1] - 14:4
**KEVIN** [1] - 2:6
**Kevin** [2] - 3:13, 4:17
**KHAN** [2] - 1:23, 3:9
**Khan** [1] - 3:5

**L**

**language** [1] - 6:1
**last** [2] - 8:11, 15:14
**late** [1] - 3:19
**least** [1] - 14:4
**Leonard** [1] - 1:14
**Lexis** [1] - 5:17
**licensed** [3] - 11:13, 19:13, 19:18
**limited** [2] - 16:16, 21:3
**litigation** [1] - 20:12
**LLC** [2] - 1:20, 22:23
**LLP** [3] - 1:22, 2:2, 2:5
**localized** [4] - 7:21, 8:4, 11:11, 19:10
**look** [1] - 8:12
**lower** [1] - 16:6

## M

**MALLET** [1] - 2:5
**Mallet** [1] - 3:14
**MALLET-PREVOST**
[1] - 2:5
**mandated** [1] - 18:10
**March** [2] - 1:16, 22:11
**matter** [2] - 5:10,
15:15
**McCollom** [1] - 3:4
**MCCOLLOM** [1] - 1:20
**meaningful** [3] - 4:14,
10:19, 19:22
**MEEHAN** [8] - 2:6,
4:17, 7:2, 8:15, 9:11,
15:5, 16:11, 21:10
**Meehan** [6] - 3:13,
3:14, 4:17, 14:23,
16:10, 21:9
**meet** [1] - 18:4
**members** [1] - 8:22
**mere** [1] - 8:1
**met** [2] - 17:13, 19:15
**Millet** [1] - 4:18
**mind** [2] - 18:24, 20:9
**minute** [1] - 10:11
**mistake** [1] - 16:9
**mobile** [1] - 15:17
**Monday** [1] - 21:3
**moot** [2] - 17:3, 17:9
**morning** [1] - 9:14
**MOSLE** [1] - 2:5
**most** [1] - 7:18
**MOTION** [3] - 1:10,
1:13, 22:16
**motion** [10] - 3:18,
4:6, 4:12, 16:13,
16:15, 16:22, 17:2,
17:3, 17:9, 20:22
**MR** [27] - 3:3, 3:9,
3:11, 4:17, 7:2, 8:15,
9:11, 9:14, 10:25,
11:14, 11:24, 12:7,
12:11, 12:15, 12:18,
12:21, 13:6, 13:25,
14:14, 14:21, 15:5,
15:24, 16:5, 16:8,
16:11, 21:10, 21:12
**must** [1] - 4:2

## N

**need** [5] - 3:23, 9:10,
10:13, 14:18, 17:9
**never** [1] - 15:9
**New** [7] - 5:18, 5:23,
5:24, 6:5, 7:19, 11:7,

19:6
**new** [2] - 16:25, 17:4
**NEW** [2] - 22:3, 22:18
**none** [1] - 17:20
**notes** [1] - 22:13
**nothing** [2] - 21:10,
21:12
**notwithstanding** [1] -
20:12
**Number** [1] - 22:9

## O

**object** [2] - 13:24,
13:25
**obtain** [1] - 18:7
**obviously** [1] - 8:6
**OF** [4] - 1:2, 1:10,
22:2, 22:3
**OFFICIALLY** [1] -
22:17
**oil** [2] - 9:1, 9:2
**once** [1] - 20:11
**one** [5] - 5:16, 7:5,
13:8, 14:25, 19:24
**operation** [2] - 11:11,
19:10
**operations** [2] - 11:16,
15:13
**OR** [3] - 1:10, 1:13,
22:16
**order** [2] - 20:14, 21:2
**orders** [1] - 21:4
**otherwise** [1] - 15:20
**owes** [1] - 7:4
**own** [1] - 12:24
**owned** [1] - 9:1
**ownership** [6] - 7:9,
8:2, 9:7, 11:14,
11:17, 11:20
**owning** [1] - 10:8
**owns** [3] - 10:6, 17:20,
18:21

## P

**pages** [1] - 22:15
**Palladian** [2] - 5:16,
6:3
**papers** [1] - 10:12
**part** [1] - 14:4
**particular** [1] - 20:15
**parties** [3] - 12:22,
13:4, 21:1
**partners** [1] - 5:16
**party** [1] - 10:21
**patience** [1] - 3:21
**payment** [1] - 15:8

**PDVA** [2] - 7:4, 7:10
**PDVH** [1] - 18:21
**PDVSA** [27] - 3:12,
5:7, 6:22, 7:3, 7:7,
7:10, 8:17, 9:24,
10:4, 10:16, 10:21,
11:9, 13:8, 13:9,
13:21, 15:1, 15:8,
16:4, 16:20, 17:20,
18:21, 18:25, 19:17,
19:25, 20:6, 20:16,
21:10
**PDVSA's** [2] - 4:12,
19:8
**people** [1] - 8:3
**per** [1] - 16:4
**perhaps** [1] - 18:8
**PERLA** [1] - 2:5
**Perla** [2] - 3:13, 3:15
**persuasive** [1] - 18:18
**PETROLEOS** [2] - 1:7,
22:10
**physical** [2] - 8:5, 8:6,
19:17
**plaintiff** [7] - 4:13, 5:2,
5:19, 6:23, 8:25,
17:16, 18:6
**Plaintiff** [2] - 1:5, 1:24
**plaintiff's** [1] - 17:8
**plaintiffs** [4] - 18:15,
18:20, 20:1, 20:6
**plenary** [1] - 6:21
**point** [2] - 5:15, 15:14
**position** [1] - 13:9
**PPSA** [9] - 12:17,
12:20, 13:9, 13:10,
13:17, 16:21, 20:8,
20:10, 20:17
**precedent** [1] - 19:13
**prefer** [1] - 14:14
**presence** [3] - 8:5,
8:6, 19:17
**present** [1] - 22:7
**previous** [1] - 20:1
**previously** [1] - 19:3
**PREVOST** [1] - 2:5
**principally** [2] - 4:11,
4:12
**privity** [1] - 12:22
**pro** [1] - 3:15
**procedure** [2] - 14:2,
14:11
**proceeding** [2] -
20:15, 20:16
**proceedings** [1] - 22:8
**process** [2] - 10:1,
20:14
**prominently** [1] - 7:18
**promote** [1] - 13:14
**prong** [3] - 6:25, 8:14,

9:6
**proper** [14] - 4:1, 9:2,
9:18, 9:19, 11:8,
13:8, 13:17, 13:21,
13:22, 16:17, 16:18,
17:16, 18:7, 20:24
**property** [9] - 5:9,
5:13, 5:22, 6:1, 6:17,
12:4, 17:20, 17:24,
18:2
**proposed** [1] - 21:2
**provide** [1] - 7:13
**provides** [1] - 5:9
**purported** [1] - 19:25
**purposes** [3] - 19:7,
19:21, 19:22
**pursuant** [1] - 5:4
**put** [1] - 3:1

## Q

**questions** [1] - 21:7

## R

**raised** [1] - 20:3
**reaching** [4] - 4:21,
14:19, 16:21, 17:6
**read** [1] - 10:12
**really** [3] - 12:5, 20:5,
20:9
**reason** [1] - 13:19
**reasons** [2] - 17:8,
19:19
**rebutting** [1] - 17:15
**recess** [1] - 21:15
**recognition** [1] - 5:5
**recognize** [2] - 5:21,
17:11
**record** [2] - 3:2, 17:14
**referring** [1] - 15:25
**register** [3] - 7:23,
10:14, 18:8
**registered** [1] - 19:12
**rejected** [1] - 19:3
**related** [2] - 13:23,
20:2
**relevance** [2] - 12:3,
12:5
**relying** [2] - 11:20,
11:25
**rem** [2] - 5:11, 17:23
**reply** [2] - 17:2, 17:5
**reported** [1] - 22:7
**Reporter** [2] - 22:5,
22:6
**republic** [1] - 7:13
**republic's** [1] - 8:18

**require** [2] - 11:13,
19:11
**required** [2] - 7:23, 8:5
**requirements** [2] -
15:18, 18:5
**rerun** [1] - 8:7
**respect** [4] - 7:16,
8:10, 12:20, 14:5
**respond** [1] - 9:16
**returns** [3] - 10:11,
10:18, 15:2
**rights** [4] - 7:9, 8:19,
8:23, 10:23
**rule** [1] - 16:13
**ruling** [4] - 8:10,
16:14, 18:9, 20:1
**running** [1] - 3:19

## S

**S.A** [2] - 1:7, 22:11
**Saint** [11] - 6:19, 7:6,
7:7, 8:8, 8:21, 9:24,
11:5, 18:10, 18:17,
19:4, 19:23
**Saint-Gobain** [11] -
6:19, 7:6, 7:7, 8:8,
8:21, 9:24, 11:5,
18:10, 18:17, 19:4,
19:23
**sales** [3] - 14:2, 14:10,
20:14
**Sam** [1] - 3:11
**SAMUEL** [1] - 2:3
**San** [1] - 3:6
**SAN** [2] - 1:3, 22:9
**satisfied** [2] - 17:19,
18:16
**satisfies** [1] - 11:18
**satisfy** [1] - 11:19
**save** [1] - 9:9
**saw** [1] - 15:2
**se** [1] - 16:4
**SEALED** [1] - 22:17
**second** [2] - 15:16,
16:23
**secretary** [1] - 16:1
**section** [1] - 17:17
**seek** [2] - 12:1, 12:4
**seeking** [1] - 5:4
**seem** [1] - 13:14
**send** [2] - 4:2, 13:23
**separately** [1] - 13:4
**service** [1] - 9:25
**severance** [2] - 13:13,
14:6
**shareholder** [3] - 7:9,
8:1, 8:19
**shares** [10] - 5:7, 6:22,

7:4, 7:10, 8:2, 8:23, 9:7, 10:22, 15:12, 18:21
**Shorthand** [2] - 22:5, 22:6
**shorthand** [2] - 22:7, 22:13
**showing** [1] - 12:19
**shown** [5] - 11:7, 11:9, 11:14, 11:16, 20:23
**side** [1] - 15:21
**sides** [1] - 3:25
**SIGNED** [1] - 22:17
**similar** [5] - 5:19, 6:3, 6:11, 9:4, 20:3
**situation** [3] - 6:11, 8:25, 18:19
**skip** [1] - 18:6
**SMITH** [1] - 1:20
**Smith** [1] - 3:5
**solely** [2] - 9:6, 10:5
**sorry** [1] - 20:21
**sort** [7] - 4:20, 5:14, 8:1, 8:7, 8:20, 15:15
**southern** [2] - 5:18, 6:5
**sovereign** [1] - 4:23
**specific** [1] - 3:22
**Speedbudget** [1] - 22:23
**squarely** [1] - 7:5
**ss** [1] - 22:2
**standalone** [1] - 4:20
**standard** [7] - 7:17, 7:20, 10:12, 11:5, 11:19, 19:15
**Stark** [1] - 1:14
**start** [1] - 3:24
**state** [3] - 6:11, 9:1, 16:1
**STATE** [1] - 22:2
**state-owned** [1] - 9:1
**STATES** [1] - 1:1
**States** [1] - 5:21
**stay** [2] - 13:10, 14:14
**Stenotype** [1] - 22:7
**step** [1] - 18:6
**still** [1] - 20:14
**stock** [3] - 10:8, 11:25, 12:24
**Strawn** [1] - 3:6
**STRAWN** [1] - 1:22
**strike** [1] - 17:3
**structure** [2] - 10:7, 11:15
**subject** [2] - 5:10, 6:2
**subsidiary** [2] - 9:3, 9:7
**succeed** [1] - 14:12

**sue** [1] - 13:5
**sued** [2] - 10:21, 18:25
**sufficient** [2] - 5:25, 18:4
**sufficiently** [2] - 7:21, 8:4
**suing** [1] - 8:25
**support** [1] - 17:2
**suppose** [1] - 20:21
**surprise** [1] - 16:14

**T**

**tax** [4] - 10:10, 10:17, 15:2, 16:1
**taxes** [1] - 15:8
**terms** [2] - 4:22, 8:18
**THE** [29] - 1:1, 1:2, 3:1, 3:7, 3:16, 6:25, 8:9, 9:8, 9:12, 10:19, 11:4, 11:22, 12:3, 12:8, 12:13, 12:16, 12:19, 13:1, 13:12, 14:9, 14:16, 14:23, 15:22, 16:4, 16:6, 16:9, 16:12, 21:11, 21:14
**therefore** [1] - 19:19
**they've** [1] - 17:13
**THOMAS** [1] - 1:20
**tiny** [1] - 16:23
**title** [1] - 5:12
**TO** [3] - 1:10, 1:13, 22:16
**today** [1] - 3:19
**together** [3] - 7:12, 21:1, 21:9
**Tom** [1] - 3:4
**took** [1] - 11:6
**top** [2] - 10:5, 10:16
**toss** [1] - 15:20
**transcript** [2] - 22:12, 22:14
**TRANSCRIPT** [1] - 1:10
**transfer** [6] - 3:18, 14:12, 16:15, 16:16, 20:10, 20:22
**TRANSFER** [3] - 1:10, 1:13, 22:16
**transferred** [2] - 13:11, 21:5
**transferring** [2] - 17:6, 20:25
**true** [1] - 22:15
**try** [2] - 14:11, 17:25
**trying** [1] - 6:12
**two** [4] - 5:1, 5:20, 7:12, 13:4

**typed** [1] - 22:13
**typewritten** [1] - 22:15

**U**

**U.S** [3] - 5:17, 9:3, 18:7
**U.S.C** [1] - 17:17
**U.S.C.A.J** [1] - 1:15
**Uebler** [3] - 3:4, 3:5, 21:11
**UEBLER** [20] - 1:20, 1:20, 3:3, 9:14, 10:25, 11:14, 11:24, 12:7, 12:11, 12:15, 12:18, 12:21, 13:6, 13:25, 14:14, 14:21, 15:24, 16:5, 16:8, 21:12
**UK** [2] - 5:3, 6:6
**ultimately** [5] - 5:23, 10:23, 17:25, 18:2, 18:22
**unavailing** [1] - 20:4
**under** [5] - 5:8, 11:8, 12:5, 12:10, 12:20
**underlying** [1] - 17:21
**undermine** [1] - 20:18
**undisputed** [2] - 9:20, 19:16
**uniform** [1] - 5:5
**UNITED** [1] - 1:1
**United** [1] - 5:21
**up** [1] - 4:9

**V**

**Venezuela** [3] - 7:11, 10:2, 19:24
**VENEZUELA** [2] - 1:7, 22:10
**vent** [1] - 7:19
**VENUE** [3] - 1:11, 1:13, 22:16
**Venue** [1] - 17:5
**venue** [37] - 3:19, 3:24, 4:1, 4:9, 4:16, 4:19, 4:22, 5:2, 5:8, 6:9, 6:15, 6:24, 7:13, 9:2, 9:5, 9:9, 9:16, 9:19, 11:7, 13:3, 13:8, 13:17, 13:21, 13:22, 14:18, 14:20, 16:17, 16:18, 16:19, 17:5, 17:10, 17:12, 17:16, 18:7, 20:24, 21:4
**versus** [1] - 6:4
**vice** [1] - 3:15

**view** [8] - 11:17, 12:22, 13:3, 18:19, 19:2, 19:3, 19:5
**virtue** [1] - 7:8
**vs** [2] - 1:6, 22:10

**W**

**warner** [1] - 22:4
**Warner** [1] - 22:22
**week** [1] - 8:11
**whole** [1] - 4:2
**WINSTON** [1] - 1:22
**Winston** [1] - 3:6

**Y**

**year** [1] - 16:3
**years** [1] - 6:20
**York** [4] - 5:18, 5:23, 5:24, 6:5