# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANCO SAN JUAN INTERNACIONAL, INC., | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : C.A. No. 1:23-CV-1263 |
| | : |
| PETRÓLEOS DE VENEZUELA, S.A. | : |
| and PDVSA PETRÓLEO, S.A., | : |
| | : |
| *Defendants.* | : |
| | : |
| | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela,*
*S.A. and PDVSA Petróleo, S.A.*

Dated: June 27, 2023

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

RELEVANT BACKGROUND .........................................................................................4

LEGAL STANDARD........................................................................................................10

ARGUMENT ....................................................................................................................10

    **I.**    This Case Should Be Dismissed for Failure to Effect Service of Process and Lack of Personal Jurisdiction ........................................................................10

    **II.**    This Case Should Be Dismissed for Lack of Subject Matter Jurisdiction.............13

    **III.**    This Case Should Be Dismissed for Failure to State a Claim...............................15

        A.    Non-compliance with U.S. Personal Jurisdiction Principles in the Foreign Court Forecloses Enforcement of Judgments under the D.C. Recognition Act................................................................................15

        B.    Fraud and Other Due Process Deficiencies in the Foreign Court Further Militate Against Enforcement of Judgments under the D.C. Recognition Act ...............................................................................16

CONCLUSION....................................................................................................................21

i

**<u>TABLE OF AUTHORITIES</u>**

<u>Pg.</u>

**Cases**

*Abelesz v. Magyar Nemzeti Bank,*
    692 F.3d 661 (7th Cir. 2012) ................................................. 4, 14

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic,*
    788 F.3d 1329 (11th Cir. 2015) .................................................. 14

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989).................................................................. 13

*Bank of Montreal v. Kough,*
    612 F.2d 467 (9th Cir. 1980) .................................................... 16

*Banneker Ventures, LLC v. Graham,*
    798 F.3d 1119 (D.C. Cir. 2015)................................................ 10

*Berkowitz v. Republic of Costa Rica,*
    288 F. Supp. 3d 166 (D.D.C. 2018).......................................... 11

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
    581 U.S. 170 (2017).................................................................. 13

*Casa Express Corp. v. Bolivarian Republic of Venezuela,*
    492 F. Supp. 3d 222 (S.D.N.Y. 2020) ....................................... 6

*Chiejina v. Fed. Republic of Nigeria,*
    No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675 (D.D.C. Aug. 23, 2022)........................ 11

*Comm'ns Imp. Exp., S.A. v. Republic of the Congo & Caisse Congolaise d'Amortissement's,*
    118 F. Supp. 3d 220 (D.D.C. 2015).................................... 15, 16

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    24 F.4th 242 (3d Cir. 2022) ....................................................... 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    932 F.3d 126 (3d Cir. 2019) .................................................. 6, 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    No. 17-mc-0151 (D. Del. May 24, 2023) ................................. 18

*Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria,*
    225 F. Supp. 3d 18 (D.D.C. 2014)....................................... 11, 12

*Guaranty Trust Co. v. United States*,
304 U.S. 126 (1938) ................................................................................................ 19

*Impact Fluid Sols. LP v. Bariven SA*,
No. 4:19-CV-00652, 2020 U.S. Dist. LEXIS 261530 (S.D. Tex. May 20, 2020) ...................... 6

*In re Estate of Delaney*,
819 A.2d 968 (D.C. 2003) ....................................................................................... 18

*Jiménez v. Palacios*,
250 A.3d 814 (Del. Ch. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) .......................... passim

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
188 F.2d 1000 (D.C. Cir. 1951) ................................................................................ 20

*Laufer v. Westminster Brokers, Ltd.*,
532 A.2d 130 (D.C. 1987) ....................................................................................... 18

*Library of Congress v. Shaw*,
478 U.S. 310 (1986) ................................................................................................ 14

*Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys.*,
703 F. App'x 79 (3d Cir. 2017) ........................................................................... 15, 16

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
874 F.3d 604 (9th Cir. 2017) ................................................................................... 19

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017) ...................................................................................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................................ 16

*Orange Middle East & Africa v. Republic of Equatorial Guinea*,
No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147 (D.D.C. May 18, 2016) ..................... 11

*PDVSA U.S. Litig. Trust v. Lukoil Pan Ams. LLC*,
65 F.4th 556 (11th Cir. 2023) ........................................................................... passim

*Pfizer, Inc. v. Government of India*,
434 U.S. 308 (1978) ................................................................................................ 19

*Republic of Sudan v. Harrison*,
139 S. Ct. 1048 (2019) ...................................................................................... 10, 13

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) ......................... 6, 10, 19

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela,*
     23 F.4th 1036 (D.C. Cir. 2022) ................................................................................. 12

*The Maret,*
     145 F.2d 431 (3d Cir. 1944) ..................................................................................... 20

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
     30 F.3d 148 (D.C. Cir. 1994) ..................................................................................... 11

*Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.,*
     623 F. Supp. 2d 518 (D. Del. 2009) .......................................................................... 19

*United States v. Belmont,*
     301 U.S. 324 (1937) .................................................................................................. 20

*United States v. Pink,*
     315 U.S. 203 (1942) ............................................................................................ 19, 20

*Verlinden B.V. v. Cent. Bank of Nigeria,*
     461 U.S. 480 (1983) .................................................................................................. 13

*World Wide Minerals v. Republic of Kazakhstan,*
     296 F.3d 1154 (D.C. Cir. 2002) ............................................................................. 4, 14

*Wye Oak Tech., Inc. v. Republic of Iraq,*
     24 F.4th 686 (D.C. Cir. 2022) ................................................................................... 13

*Zivotofsky v. Kerry,*
     576 U.S. 1 (2015) ...................................................................................................... 19

**Statutes**

10 Del. C. § 4801 .................................................................................................................. 8

28 U.S.C. § 1330(a) ......................................................................................................... 1, 13

28 U.S.C. § 1330(b) ..................................................................................................... 1, 3, 13

28 U.S.C. § 1603 .................................................................................................................. 4

28 U.S.C. § 1604 ................................................................................................................ 13

28 U.S.C. § 1605 ................................................................................................................ 13

28 U.S.C. § 1605(a)(1) .................................................................................................. 3, 4, 14

28 U.S.C. § 1606 ................................................................................................................ 13

28 U.S.C. § 1607 ................................................................................................................ 13

28 U.S.C. § 1608(b) ........................................................................................... passim

D.C. Code § 15-361 .................................................................................................. 1, 10

D.C. Code § 15-364(b)(2) .............................................................................................. 15

D.C. Code § 15-364(c)(1) .............................................................................................. 17

D.C. Code § 15-364(c)(2) .............................................................................................. 17

D.C. Code § 15-364(c)(3) .............................................................................................. 17

D.C. Code § 15-364(c)(8) .............................................................................................. 17

D.C. Code § 15-365(a)(3) .............................................................................................. 15

**Federal Rules**

Fed. R. Civ. P. 12(b) ..................................................................................................... 10

Fed. R. Civ. P. 12(b)(1).............................................................................................. 1, 15

Fed. R. Civ. P. 12(b)(2).............................................................................................. 1, 13

Fed. R. Civ. P. 12(b)(4).............................................................................................. 1, 13

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1

**Other Authorities**

3 Ved P. Nanda & David K. Pansius, LITIGATION OF INTERNATIONAL DISPUTES IN U.S.
    COURTS § 20:15 (2d ed. 2009) ................................................................................. 18

H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6623 ................................... 11

**Foreign Cases**

*Banco San Juan Internacional, Inc. v. PDVSA Petróleo, S.A,*
    [2021] EWHC 1949 (Comm) (July 9, 2021) ............................................................. 7

*Banco San Juan Internacional, Inc. v. Petróleos de Venezuela,*
    [2020] EWHC 2145 (Comm) (July 31, 2020) ........................................................... 7

*Banco San Juan Internacional, Inc. v. Petróleos de Venezuela, S.A.,*
    [2020] EWHC 2937 (Comm) (Nov. 4, 2020) ............................................................. 7

Petróleos de Venezuela, S.A. ("PDVSA") and its wholly owned subsidiary PDVSA

Petróleo, S.A. ("PPSA" and, together with PDVSA, "Defendants") respectfully submit this

memorandum of law in support of their motion to dismiss the complaint filed by Plaintiff Banco

San Juan Internacional, Inc. ("Banco San Juan" or "Plaintiff") for insufficient service of process

pursuant to Federal Rule of Civil Procedure 12(b)(4) and the Foreign Sovereign Immunities Act

(the "FSIA"), 28 U.S.C. § 1608(b); lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2) and the FSIA, 28 U.S.C. § 1330(b); lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1) and the FSIA, 28 U.S.C. § 1330(a); and

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6) and the District of Columbia's Uniform Foreign-Country Money Judgments

Act (the "D.C. Recognition Act"), D.C. Code § 15-361.

## INTRODUCTION

This is an action in which Banco San Juan is seeking to enforce two judgments it

obtained in the United Kingdom knowing full well that the agents of the entities it purportedly

served in those proceedings were not the legitimate representatives of the entity whose assets it

would later seek to attach in aid of enforcing those judgments in the United States. Banco San

Juan commenced the U.K. proceedings against PDVSA and PPSA—both of which are agencies

or instrumentalities of the Bolivarian Republic of Venezuela (the "Republic" or "Venezuela")—

after the United States recognized the Venezuelan National Assembly and its leadership as the

only legitimate government of Venezuela (the "Interim Government") and expressly

derecognized the regime of former Venezuelan president Nicolás Maduro.

Although the Maduro regime continues to usurp power over most of the apparatus of the

Venezuelan government in Venezuela, the Interim Government and its duly appointed

representatives are the only ones with the power to act on behalf of the Republic in the United

States and to exercise its shareholder rights in PDVSA and its subsidiaries. Accordingly, upon

being recognized by the United States, the Interim Government appointed a new *ad hoc* board of

directors for PDVSA in the United States (the "*ad hoc* Board")—a board that had already been

recognized by U.S. courts as the only duly appointed board of PDVSA in the United States by

the time Plaintiff commenced the U.K. actions, and as the only legitimate owner of PDVSA's

assets in the United States, *i.e.*, the shares in its wholly owned Delaware subsidiary PDV

Holding, Inc. ("PDVH"). *See Jiménez v. Palacios*, 250 A.3d 814, 819-20 (Del. Ch. Aug. 2,

2019), *aff'd*, 237 A.3d 68 (Del. 2020).

 Yet Plaintiff never made any attempts to put the *ad hoc* Board on notice of the U.K.

proceedings. Given the legion of U.S.-based international law firms advising Plaintiff in these

actions, there can be no doubt that it purposefully devised a strategy to obtain judgments against

PDVSA and PPSA without giving the *ad hoc* Board notice and the opportunity to be heard in the

U.K. proceedings with the intent of later bringing those judgments to the United States in an

attempt to execute on property owned by the *ad hoc* Board, namely the PDVH shares. That

conduct establishes grounds for refusing to recognize and enforce the U.K. judgments under the

D.C. Recognition Act, namely the provisions involving personal jurisdiction, fraud, due process,

and public policy. This case should thus be dismissed due to Plaintiff's failure to state a claim

under the D.C. Recognition Act.

 But this Court need not reach the merits, because Plaintiff has not satisfied the FSIA's

service and sovereign-immunity provisions in this action and so this Court lacks personal and

subject matter jurisdiction. While Plaintiff purported to give notice of this action to agents of the

unrecognized illegitimate Maduro regime in Venezuela, Plaintiff did not even attempt service on

the *ad hoc* Board—the only entity with standing to represent Defendants in the United States.

*See PDVSA U.S. Litig. Trust v. Lukoil Pan Ams. LLC*, 65 F.4th 556, 562-63 (11th Cir. 2023);

*Jiménez*, 250 A.3d at 819-20.

      In any case, Plaintiff's attempt to serve Defendants in Venezuela failed because it did not

comply with the FSIA's exclusive provisions for serving sovereign defendants, 28 U.S.C.

§ 1608. Plaintiff argues that it served Defendants pursuant to a "special arrangement" contained

in the parties' underlying contracts. But, to qualify as a "special arrangement" under section

1608, the contract must clearly provide for service of process in the particular U.S. proceeding at

issue. Here, the underlying contracts provide "for service of process in England" only. ECF No.

36-3 at § 9.12(c); ECF No. 36-4 at § 10.12(c). Such a contractual provision does not constitute a

special arrangement for service in U.S. proceedings under the FSIA.

      Furthermore, Plaintiff did not serve any agent authorized or selected by Defendants.

Rather, Plaintiff itself purported to appoint Maples & Calder ("Maples") to act as Defendants'

agent for service in U.K. proceedings and thereafter purported to deliver copies of the Summons

and Complaint by hand and email to an individual in Maples' London office. Putting aside the

fact that Maples purportedly emailed and delivered copies of the Summons and Complaint only

to individuals associated with the Maduro-controlled PDVSA in Venezuela, that method was not

effective service under the FSIA. Plaintiff's failure to properly serve Defendants precludes the

exercise of personal jurisdiction under the FSIA, 28 U.S.C. § 1330(b).

      Defendants are also presumptively immune from this Court's jurisdiction under the FSIA.

While Plaintiff argues that Defendants waived their sovereign immunity in the underlying

contracts, the FSIA's wavier exception, 28 U.S.C. § 1605(a)(1), must be construed narrowly and

in favor of the sovereign. *See, e.g., Abelesz v. Magyar Nemzeti Bank,* 692 F.3d 661, 670 (7th Cir.

2012); *World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002). The unique circumstances of this case and Plaintiff's failure to uphold its own obligations under the contracts should foreclose any determination that Defendants waived their sovereign immunity in this action and so this Court also lacks subject matter jurisdiction under the FSIA.

Therefore, this Court should dismiss this action for improper service, lack of personal and subject matter jurisdiction under the FSIA, or failure to state a claim.

## RELEVANT BACKGROUND

***The Parties***. PDVSA is a Venezuelan corporation that is wholly owned by the Republic. Amend. Compl. ¶ 2. PPSA is a Venezuelan corporation that is wholly owned by PDVSA. Amend. Compl. ¶ 3. Defendants are undisputedly agencies or instrumentalities of the Republic under the FSIA. Amend. Compl. ¶ 4 (citing 28 U.S.C. § 1603). Plaintiff is a Puerto Rican bank that allegedly entered into two credit agreements with PDVSA. Amend. Compl. ¶¶ 1, 8.

***The Underlying Transactions***. According to the Amended Complaint, Plaintiff entered into the first agreement with PDVSA in March 2016 (the "2016 Credit Agreement") pursuant to which Plaintiff allegedly loaned approximately $39.5 million to PDVSA. Amend. Compl. ¶¶ 8, 12. Plaintiff allegedly entered into the second agreement with PDVSA in April 2017 (the "2017 Credit Agreement" and together with the 2016 Credit Agreement, the "Credit Agreements"), pursuant to which Plaintiff allegedly loaned approximately $31 million to PDVSA. *Id*. PPSA allegedly guaranteed PDVSA's payment obligations under the 2017 Credit Agreement. Amend. Compl. ¶ 8. The Credit Agreements were governed by English law and provided for the U.K. courts to have exclusive jurisdiction to resolve any disputes under those Agreements. Amend. Compl. ¶ 10; ECF No. 36-3 at § 9.12; ECF No. 36-4 at § 10.12. The Credit Agreements

contained provisions concerning service of process in England. The 2016 Credit Agreement

states:

> The Borrower hereby agrees forthwith to appoint a Process Agent
> as its authorized agent *for service of process in England*. After
> such appointment, if for any reason the Process Agent shall cease
> to be such agent for the service of process, the Borrower hereby
> agrees forthwith to appoint a new agent *for service of process in
> England* … If the Borrower fails to comply with such obligation to
> appoint a new agent for *service of process in England*, the Lender
> may appoint an agent *for service of process in England*.

ECF No. 36-3 at § 9.12(c) (emphasis added). The 2017 Credit Agreement is substantively

identical. ECF No. 36-4 at § 10.12(c). On April 6, 2016, PDVSA designated Sisec Limited as its

agent to receive process in England pursuant to the 2016 Credit Agreement. Amend. Compl.

¶ 16. PDVSA did not designate an agent to receive process under the 2017 Credit Agreement. *Id.*

   ***The U.S. Recognition of the Interim Government***. Following Maduro's efforts to stay in

power after a highly contested election, in January 2019, the Venezuelan National Assembly

declared Maduro's presidency illegitimate. *See Crystallex Int'l Corp. v. Bolivarian Republic of

Venezuela*, 24 F.4th 242, 247 (3d Cir. 2022). Pursuant to Article 233 of the Venezuelan

constitution, the president of the Venezuelan National Assembly at the time, Juan Guaidó,

became the interim president of Venezuela. *Jiménez*, 250 A.3d at 821. On January 23, 2019, the

Executive Branch officially recognized Mr. Guaidó as interim president of Venezuela and

thereafter expressly derecognized the Maduro regime. *Id.* at 821, 822 n.8. The Executive has

refused to recognize Maduro as Venezuela's head of state and continues to recognize the Interim

Government as the only legitimate government of Venezuela. *Id.* at 822 n.8, 823 n.9. Thus, only

the duly appointed representatives of the Interim Government have standing to act and speak on

behalf of the Republic in U.S. courts, as confirmed by numerous U.S. courts as early as May 1,

2019. *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, 2019 U.S. App.

LEXIS 17543, at \*1-2 (D.C. Cir. May 1, 2019); s*ee also, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019); *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 226 (S.D.N.Y. 2020).

On February 5, 2019, the National Assembly enacted the Statute to Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela (the "Transition Statute"). *Jiménez,* 250 A.3d at 824 & n.19. Article 15 of the Transition Statute empowered Interim President Guaidó to appoint ad hoc Administrative Boards of state-owned companies, including PDVSA. *See id.* at 825. On February 8, 2019, Interim President Guaidó exercised his authority under the Transition Statute to appoint the *ad hoc* Board. The National Assembly then passed a special resolution ratifying those appointments. *Impact Fluid Sols. LP v. Bariven SA*, No. 4:19-CV-00652, 2020 U.S. Dist. LEXIS 261530, at \*15 (S.D. Tex. May 20, 2020).

On August 2, 2019, the Delaware Chancery Court issued a decision recognizing the *ad hoc* Board as PDVSA's only duly appointed board as a matter of U.S. law—a ruling that was affirmed by the Delaware Supreme Court. *Jiménez*, 250 A.3d at 819-20. Other courts have consistently reached the same conclusion. *See, e.g.*, *PDVSA U.S. Litig. Trust*, 65 F.4th at 562-64; *Impact Fluid Sols. LP*, 2020 U.S. Dist. LEXIS 261530, at \*9. All of these events have been covered widely by news media and commentators in the United States and around the world.

***The Underlying Proceedings in the United Kingdom***. After PDVSA allegedly defaulted under the Credit Agreements, Plaintiff brought two actions in the U.K. courts to recover the outstanding principal amounts of the loans with interest. Amend. Compl. ¶¶ 12-15, 23.

Plaintiff commenced the first U.K. lawsuit against PDVSA in the Commercial Court, Queen's Bench Division to recover amounts allegedly owed under both Credit Agreements in

May 2020, after the U.S. recognition of the Interim Government and the Delaware Chancery

Court's recognition of the *ad hoc* Board. Amend. Compl. ¶ 15; ECF No. 36-1. Plaintiff argued

that Sisec Limited's appointment as PDVSA's U.K. process agent had expired in April 2019,

that PDVSA failed to appoint a replacement agent under the 2016 Credit Agreement, and that

PDVSA failed to appoint any U.K. process agent under the 2017 Credit Agreement. *Banco San*

*Juan Internacional, Inc. v. Petróleos de Venezuela,* [2020] EWHC 2145 (Comm) (July 31, 2020)

at ¶¶ 5, 8. Plaintiff purported to appoint Maples in London to serve as PDVSA's agent to receive

process of English proceedings under the Credit Agreements. *Id.* at ¶ 5. Plaintiff then purported

to serve PDVSA by serving Maples—the third-party agent that Plaintiff itself appointed. *Id.* On

November 4, 2020, the U.K. court entered a judgment against PDVSA in the amount of

$46,656,068 for the 2016 Credit Agreement and $37,230,278 for the 2017 Credit Agreement (the

"2020 Judgment"). ECF 36-1 at 5; *Banco San Juan Internacional, Inc. v. Petróleos de*

*Venezuela, S.A.*, [2020] EWHC 2937 (Comm) (Nov. 4, 2020). Neither the *ad hoc* Board nor any

member thereof was given any notice of this action. Cardenas Decl. ¶¶ 3-4, ECF No. 24.

In December 2020, Plaintiff initiated a second lawsuit in the U.K. courts against PPSA as

guarantor under the 2017 Credit Agreement. Amend. Compl. ¶ 23; ECF No. 36-2. Again,

Plaintiff purported to serve PPSA by serving Maples in London and argued that Plaintiff was

entitled to appoint Maples as PPSA's agent for receiving service of process for proceedings in

the U.K. under the 2017 Credit Agreement. Amend. Compl. ¶ 24. PPSA did not appear. ECF No.

36-2 at 15. On July 9, 2021, the U.K. court entered a default judgment against PPSA in the

amount of $39,270,078 (the "2021 Judgment"). ECF No. 36-2 at 5; *Banco San Juan*

*Internacional, Inc. v. PDVSA Petróleo, S.A.*, [2021] EWHC 1949 (Comm) (July 9, 2021). And,

again, no notice was given to the *ad hoc* Board or any of its members. Cardenas Decl. ¶¶ 3-4, ECF No. 24.

Banco San Juan was advised by lawyers from the law firm of Allen & Overy in both proceedings. In addition, in seeking attorneys' fees, Banco San Juan listed several other U.S.-based international firms as providing services in connection with the U.K. proceedings, including DLA Piper and Holland and Knight, as well as Winston & Strawn, which is Plaintiff's counsel in this action. ECF No. 1-1 at 42-45.

*U.S. Enforcement Proceedings*. On October 5, 2022, Plaintiff commenced an action against Defendants in the U.S. District Court for the District of Delaware seeking to enforce the U.K. judgments pursuant to Delaware's Recognition Act, 10 Del. C. § 4801. ECF No. 1, ¶¶ 31, 41. On October 31, 2022, Plaintiff filed a status report stating that it filed the action in Delaware "because of the ongoing litigation in this Court regarding the sale of PDVSA's shares in [PDVH] to satisfy various judgment creditors of Venezuela and its state-owned entities, including PDVSA." ECF No. 12 at 2. It further explained that, "[a]fter domesticating its foreign U.K. judgments through this action," Plaintiff would seek to have its judgments added to the judicial sale of the PDVH shares that is currently being contemplated in the Delaware district court. *Id.*

Plaintiff further stated that it intended to serve Defendants pursuant to a "special arrangement for service contractually agreed between Plaintiff and Defendants," as well as through the Hague Convention for Service of Judicial Documents Abroad.[1] *Id.* at 1. On November 22, 2022, Plaintiff filed two affidavits of service signed by a "Rachel Spence" who claims to have received copies of the Summons and Complaint on November 18, 2022 on behalf of Maples as agents for PDVSA and PPSA. ECF Nos. 13, 14. Ms. Spence claims to have

---

[1] Plaintiff does not purport to have actually attempted, let alone completed, service on Defendants through the Hague Convention.

"personally received" the Summons and Complaint at Maples' offices in London and "by electronic service." ECF No. 13 at 3; ECF No. 14 at 3. The affidavits do not state that Maples has any contact information for anyone at PDVSA or PPSA, let alone state that the Summons and Complaint were, in fact, served on either Defendant.

On January 17, 2023, Defendants moved to dismiss or transfer the Delaware action to this Court due to improper venue and moved to dismiss on various other grounds, including insufficient service of process. ECF No. 17. In response, Plaintiff attached several exhibits to their Opposition to Defendants' Motion to Dismiss, purporting to show service, including an email from Ms. Spence to Plaintiff's counsel stating that she emailed the documents to six listed individuals and that she had "as yet" "not received any read receipts or download notifications." Exhibit F to Opposition, ECF No. 22-1 at 20-22. All six individuals are associated with the unrecognized Maduro regime, not the *ad hoc* Board. *Id.* Plaintiff also submitted witness statements by Maples' Venezuelan counsel stating that they delivered the "PDVSA Documents" to several officers at PDVSA's headquarters in Caracas, Venezuela. Exhibit G to Opposition, ECF No. 22-1 at 24, 26. The stamped and signed summons filed by Plaintiff identifies only PDVSA's Caracas location and officers associated with the Maduro-controlled PDVSA, not the *ad hoc* Board. Exhibit H to Opposition, ECF No. 22-1 at 29-36. There is no evidence that any attempt was made in the United States to serve or even notify the *ad hoc* Board, which represents the only PDVSA authorized to appear and defend this action in U.S. courts.[2]

On April 4, 2023, the Delaware district court granted Defendants' motion to dismiss for improper venue and transferred the case to this Court, the default venue for actions against

---

[2] In its Opposition to the motion, Plaintiff reiterated that it was seeking "to monetize its foreign judgments in Delaware because of the pending Sales Procedure Order . . . governing the sale process of Defendant PDVSA's shares in PDV Holding, Inc." ECF No. 21 at 6.

foreign states and their agencies or instrumentalities under the FSIA. The Delaware district court expressly declined to rule on Defendants' other grounds for dismissal. ECF No. 31. The case was docketed in this Court on May 8, 2023. On May 30, 2023, Plaintiff filed its Amended Complaint, seeking an order recognizing and enforcing the U.K. judgments pursuant to the D.C. Recognition Act, D.C. Code § 15-361. ECF No. 36 at 14-16.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule 12(b), the Court accepts well-pleaded factual allegations in the complaint as true. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1125 n.1 (D.C. Cir. 2015). Where documents are appended to the complaint, those documents are considered part of the pleadings, and the Court may look to facts established by that evidence in deciding whether to dismiss the complaint. *Id.* at 1133.

## ARGUMENT

### I.  This Case Should Be Dismissed for Failure to Effect Service of Process and Lack of Personal Jurisdiction

In the first instance, Plaintiff has not served Defendants in this action because no service or notice has even been attempted on the *ad hoc* Board, the only entity with standing to represent PDVSA's interests in U.S. courts and the only entity that owns PDVSA's property in the United States, *i.e.*, the PDVH shares. *See, e.g.*, *PDVSA U.S. Litig. Trust*, 65 F.4th at 562-64; *Jiménez*, 250 A.3d at 819-20; *see also Rusoro*, 2019 U.S. App. LEXIS 17543, at *1-2. But even Plaintiff's so-called efforts to serve process in Venezuela fell short of the requirements applicable in this case.

Because Defendants are "agencies or instrumentalities" of the Republic, section 1608(b) of the FSIA provides the exclusive methods for serving Defendants. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d

148, 154 (D.C. Cir. 1994) (quoting H.R. Rep. No. 94-1487, at 24 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6623). Here, Plaintiff argues that it served Defendants pursuant to a contractually agreed-upon "special arrangement." ECF No. 12 at 1. To be sure, the FSIA provides for service of process to be effected on an agency or instrumentality of a foreign state through a contractually agreed-upon special arrangement for service of process. *See* 28 U.S.C. § 1608(b)(1). However, the terms of the contractual special arrangement must clearly encompass service of process in the particular U.S. proceeding in which Defendants are being sued. *See Chiejina v. Fed. Republic of Nigeria*, No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675, at *7-8 (D.D.C. Aug. 23, 2022); *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 173 (D.D.C. 2018); *Orange Middle East & Africa v. Republic of Equatorial. Guinea*, No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147, at *8 (D.D.C. May 18, 2016); *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria* ("*Enron*"), 225 F. Supp. 3d 18, 22-23 (D.D.C. 2014). No such special arrangement exists here.

Plaintiff asserts that the Credit Agreements provide a mechanism to serve PDVSA "in England related to any proceedings, actions, or jurisdictions." Amend. Compl. ¶ 10. The Agreements contain no such language. The 2016 Credit Agreement states only that Defendants agreed to appoint a process agent "for service of process in England." ECF No. 36-3 at § 9.12(c). The 2017 Credit Agreement is substantively identical. ECF No. 36-4 at § 10.12(c). Neither agreement says anything about service of process in U.S. proceedings.

The *Enron* case is on point. There, the plaintiff sought to enforce an international arbitration award against Nigeria and purported to serve Nigeria in accordance with a special arrangement in the parties' underlying agreement. 225 F. Supp. 3d at 21-22. Judge Cooper of this Court held that the parties' agreement provided for the parties to be served through a designated

agent "in connection with *proceedings in England and Wales*"—but did not provide for a special arrangement for service in proceedings in the United States under the FSIA. *Id.* at 23 (emphasis added). The court explained that: "The parties' inclusion of a specific provision for legal service only in another jurisdiction indicates that they did not intend to create a 'special arrangement for service' for proceedings in the United States." *Id.* Judge Cooper thus concluded that service was improper under the FSIA.

Similar to the agreement in *Enron*, the service provisions in the Credit Agreements are explicitly limited to "service of process in England." ECF No. 36-3 at § 9.12(c); ECF No. 36-4 at § 10.12(c). Those provisions therefore do not apply in proceedings before this Court or any other court in the United States and, as in *Enron*, do not constitute a "special arrangement" for service of process under the FSIA.

Moreover, Plaintiff's attempt to serve Defendants by giving copies of the pleadings to Maples smacks of gamesmanship. Maples was appointed by Plaintiff itself and not Defendants. There is no basis for claiming that service on a random third party in London was in any way calculated to provide Defendants reasonable notice of this U.S. proceeding. That is particularly true since Maples does not purport to have provided any notice of these proceedings to the *ad hoc* Board. ECF No. 13 at 3; ECF No. 14 at 3. This Court and others have previously refused to condone similar attempts to skirt the requirements of the FSIA. *See Saint-Gobain*, 2019 U.S. Dist. LEXIS 214167, at *31 (granting PDVSA's motion to dismiss where plaintiff failed to separately serve PDVSA); *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1040-41 (D.C. Cir. 2022) (rejecting creditor's attempts to short-cut service of process on the Republic); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela* ("*Mobil*"), 863 F.3d 96, 124-25 (2d Cir. 2017) (vacating *ex parte* judgment entered

12

against the Republic as void under the FSIA's service and venue requirements). Thus, this Court should dismiss this case for insufficient service of process under the FSIA pursuant to Federal Rule 12(b)(4).

Plaintiff's failure to serve Defendants in accordance with the requirements of the FSIA deprives this Court of personal jurisdiction under 28 U.S.C. § 1330(b). Section 1330(b) provides for the exercise of personal jurisdiction in actions against foreign states and their agencies and instrumentalities only where defendants have been served in accordance with the FSIA's service provisions. *See Harrison*, 139 S. Ct. at 1054. Therefore, this Court should also dismiss this case for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2).

## II.  <u>This Case Should Be Dismissed for Lack of Subject Matter Jurisdiction</u>

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, foreign states are presumptively immune from suit in U.S. courts. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 180 (2017); 28 U.S.C. § 1604. That presumption can be overcome only where the plaintiff establishes the substantive requirements for abrogating foreign sovereign immunity set forth in 28 U.S.C. §§ 1605-1607. *Helmerich & Payne Int'l Drilling Co.*, 581 U.S. at 180 (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983)). Satisfying those substantive requirements is a prerequisite to the exercise of subject matter jurisdiction under 28 U.S.C. § 1330(a). The plaintiff has the burden of overcoming the presumption of immunity by producing sufficient evidence to demonstrate that one of the FSIA's statutory exceptions to immunity applies. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022).

Plaintiff alleges that PDVSA waived its foreign sovereign immunity in the Credit Agreements. The FSIA's wavier exception, 28 U.S.C. § 1605(a)(1), is construed and applied narrowly. *Abelesz*, 692 F.3d at 670. Specifically, "explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign.'" *World Wide Minerals*, 296 F. 3d at 1162 (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986)); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (same).

Putting aside the fact that the PDVSA *ad hoc* Board never approved the Credit Agreements and had never even seen a copy of them until after this action was commenced (Cardenas Decl. ¶ 5, ECF No. 24), the alleged waiver provisions should not be construed as broadly waiving the PDVSA *ad hoc* Board's immunity under any and all circumstances. Rather, this Court must construe those provisions narrowly and in the *ad hoc* Board's favor. *See World Wide Minerals*, 296 F.3d at 1162. Those provisions should not be read as waiving the PDVSA *ad hoc* Board's immunity under the circumstances of this case in which Plaintiff sued a rogue PDVSA in the U.K. and the PDVSA *ad hoc* Board was never given notice of those proceedings. Despite the fact that Plaintiff's ultimate litigation goal is clearly to reach PDVSA's property in the United States, namely the PDVH shares in Delaware, Plaintiff has pursued a litigation strategy to keep the only owner of those shares—the *ad hoc* Board—in the dark. Cardenas Decl. ¶¶ 3-5, ECF No. 24.

Plaintiff could have given the *ad hoc* Board notice of the U.K. proceedings but made a deliberate choice to keep the *ad hoc* Board on the sidelines. Having made that choice, Plaintiff should be estopped from arguing that the PDVSA *ad hoc* Board waived its immunity under these agreements and from pursuing the PDVSA *ad hoc* Board's assets in the United States. Plaintiff chose to serve only the Maduro-controlled PDVSA in both U.K. actions, so Plaintiff should now

14

be limited to enforcing its judgments only in jurisdictions where the rogue "PDVSA" owns

property. It owns no property in the United States and so Plaintiff should not be allowed to bring

those judgments here and invoke PDVSA's waiver of immunity to seek enforcement of those

judgments against property of the *ad hoc* Board. There are no allegations in the complaint that

would support subject matter jurisdiction under any other FSIA exception.

Therefore, this Court should dismiss this case for lack of subject matter jurisdiction under

the FSIA pursuant to Federal Rule 12(b)(1).

**III.     This Case Should Be Dismissed for Failure to State a Claim**

Plaintiff's conduct in the U.K. proceedings resulted in judgments that are not enforceable

under five grounds set forth in the D.C. Recognition Act.

**A.     Non-compliance with U.S. Personal Jurisdiction Principles in the Foreign Court Forecloses Enforcement of Judgments under the D.C. Recognition Act**

To start, under the D.C. Recognition Act's mandatory provisions, courts in the District of

Columbia "may not recognize a foreign-country judgment" where the foreign court lacked

personal jurisdiction over the defendant. D.C. Code § 15-364(b)(2); *see Comm'ns Imp. Exp., S.A.*

*v. Republic of the Congo & Caisse Congolaise d'Amortissement's*, 118 F. Supp. 3d 220, 225

(D.D.C. 2015). While the D.C. Recognition Act provides a list of conditions sufficient to

establish personal jurisdiction in the foreign court for purposes of the D.C. Recognition Act, such

as when the defendant "had agreed to submit to the jurisdiction of the foreign court with respect

to the subject matter involved," D.C. Code § 15-365(a)(3), none of those conditions excuses a

plaintiff's failure to put the proper defendants on notice of the action. *See Louis Dreyfus*

*Commodities Suisse, SA v. Fin. Software Sys.*, 703 F. App'x 79, 82-83 (3d Cir. 2017) ("[T]he

mere existence of a forum-selection clause cannot relieve the plaintiff of its duty to provide the

defendant with some notice of the specific lawsuit being initiated."). That is because, for a

foreign-country judgment to be enforceable in the District of Columbia, personal jurisdiction must comport not only with U.K. law but also with "American principles of jurisdictional due process." *Commissions Import Export*, 118 F. Supp. 3d at 226 (quoting *Bank of Montreal v. Kough*, 612 F.2d 467, 471 (9th Cir. 1980)). A fundamental requirement of any standard of due process is to give adequate notice to the proper defendant. *Id.* at 227 (citing *Bank of Montreal*, 612 F.2d at 471). The means employed for giving notice must be "reasonably certain to inform those affected." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

Here, there is no evidence showing that any process or other notice of the U.K. actions reached all "those affected," including—most critically—the only duly appointed representatives of PDVSA and PPSA in the United States, *i.e.*, the *ad hoc* Board. *See id.* at 314 (explaining that plaintiff must provide notice that is "reasonably calculated, *under all the circumstances*, to apprise *interested parties* of the pendency of the action and afford them an opportunity to present their objections.") (emphases added). The fact that PDVSA agreed to submit itself to the jurisdiction of the U.K. courts for actions brought under the Credit Agreements did not eliminate Banco San Juan's obligation to serve or give sufficient notice to PDVSA's proper representative. *Louis Dreyfus*, 703 F. App'x at 82-83. In short, personal jurisdiction in the U.K. proceedings did not comport with the FSIA or constitutional due process requirements. Thus, Plaintiff failed to establish personal jurisdiction over Defendants in the U.K. proceedings for purposes of the D.C. Recognition Act and this Court must refuse enforcement of the U.K. judgments.

### B. Fraud and Other Due Process Deficiencies in the Foreign Court Further Militate Against Enforcement of Judgments under the D.C. Recognition Act

In addition, courts in D.C. "need not recognize a foreign-country judgment" where (i) fraud deprived the losing party of an adequate opportunity to present its case, (ii) the losing party lacked sufficient notice to enable the defendant to defend, (iii) proceedings in the foreign court

were not compatible with the requirements of due process of law, and (iv) the judgment is repugnant to the public policy of the United States. D.C. Code § 15-364(c)(1)-(3), (8). While these grounds are discretionary, all of these considerations should compel this Court to refuse recognition and enforcement of the U.K. judgments under these circumstances.

Plaintiff had the benefit of the advice of several U.S.-based international law firms that undoubtedly understood the implications of the United States' recognition of the Interim Government for enforcing foreign-country judgments against property of PDVSA in the United States. As the Delaware Chancery Court had made clear by the time Plaintiff commenced the first action in the United Kingdom, only the *ad hoc* Board of PDVSA appointed by the Interim Government—the only U.S.-recognized government of Venezuela—has the authority to speak and act on behalf of PDVSA in a U.S. court and the *ad hoc* Board is the only entity with any cognizable ownership interest in PDVSA's U.S. property, namely the shares of its Delaware subsidiary, PDVH. *See Jiménez*, 250 A.3d at 819-20; *see also PDVSA U.S. Litig. Trust*, 65 F.4th at 562-63. Yet, Plaintiff deliberately chose not to give any notice of the U.K. proceedings to the *ad hoc* Board, ensuring that PDVSA's only duly appointed representatives, and the only owner of PDVSA's property in the United States, would be deprived of the opportunity to present a defense in those proceedings, even though Plaintiff's ultimate plan was to seek enforcement of those judgments against the PDVH shares. Indeed, Banco San Juan's first stop in the United States was the district court in Delaware, where procedures for a judicial sale of the PDVH shares are currently being considered. Even though the Delaware district court transferred Plaintiff's action to this Court, Plaintiff continues to press its claims in Delaware by seeking to have its judgments added to that judicial sale. *See* Banco San Juan Internacional's Response to

17

Questions in the Court's Order Dated May 10, 2023, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-0151 (D. Del. May 24, 2023), ECF No. 575 at 2.

In *Continental Transfert*, a court in this district explained that the "only type of fraud that may justify non-enforcement of an otherwise valid judgment of any court of competent jurisdiction, including a foreign court, is extrinsic fraud." 697 F. Supp. 2d at 64 (quoting *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 133 (D.C. 1987)). Extrinsic fraud includes "fraudulent conduct by the prevailing party that deprived the losing party of an adequate opportunity to present its case to the court." *Id*. (quoting 3 Ved P. Nanda & David K. Pansius, LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 20:15 (2d ed. 2009)) (citation and internal quotation marks omitted); *accord In re Estate of Delaney*, 819 A.2d 968, 981 n.4 (D.C. 2003). In *Continental*, the defendants, which included Nigeria, claimed that judgment had been obtained by fraud because the plaintiff had failed to disclose to the foreign court the existence of a Nigerian court restraining order. 697 F. Supp. 2d at 51. Judge Friedman rejected that claim because the defendants there had sufficient notice of the foreign proceedings in time to defend the action but chose not to appear. *Id*. at 64. Nevertheless, Judge Friedman noted that the outcome would have been different if defendants had shown "that Continental's failure to inform the English court" of relevant facts had deprived defendants "of an adequate opportunity to present [their] case." *Id*. (brackets supplied). Judge Friedman emphasized that point by noting that "[t]here [was] no evidence that Continental [was] in any way responsible for Nigeria's failure to appear or that Continental otherwise prevented Nigeria from defending itself." *Id*.

By contrast, here, Plaintiff failed to give notice to the *ad hoc* Board and kept the U.K. courts in the dark about the existence of *the ad hoc* Board. Plaintiff is thus responsible for depriving the *ad hoc* Board of the opportunity to appear in the U.K. proceedings and defend the

case. That is enough evidence for this Court to invoke the fraud exception under the D.C. Recognition Act as a basis for refusing enforcement of these judgments. *See Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 537 (D. Del. 2009) (rejecting a "clear and convincing evidence" standard for fraud under Delaware's Recognition Act and refusing to enforce a foreign-country judgment where the court was "not satisfied" that the judgment "was not obtained by fraud").

Extrinsic fraud aside, Plaintiff's calculated gambit resulted, at the very least, in proceedings that are incompatible with U.S. standards of due process, because in the absence of any notice of the proceedings to the *ad hoc* Board, PDVSA was deprived of a full and fair opportunity to defend itself in contravention of "basic procedural fairness." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617 (9th Cir. 2017).

Finally, Plaintiff's conduct has tainted the U.K. judgments to the point that enforcing them under these circumstances would be repugnant to U.S. public policy. The Supreme Court has repeatedly held that the U.S. Judiciary is bound by and cannot interfere with the Executive Branch's recognition of foreign governments. *See Zivotofsky v. Kerry*, 576 U.S. 1, 18-19 (2015); *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 319-20 (1978); *United States v. Pink*, 315 U.S. 203, 229 (1942); *Guaranty Trust Co. v. United States*, 304 U.S. 126 (1938). Courts including the D.C. Circuit have thus uniformly deferred to the Executive's recognition of the Interim Government. *See, e.g.*, *Rusoro*, 2019 U.S. App. LEXIS 17543, at *1-2; *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019); *PDVSA U.S. Litig. Trust*, 65 F.4th at 562-64; *Jiménez*, 250 A.3d at 831, 838.

Moreover, only a recognized government can be deemed to have any rights in the U.S. assets of a state-owned enterprise. *See Pink*, 315 U.S. at 231-32, 234; *United States v. Belmont*,

301 U.S. 324, 328-30 (1937). Where a foreign regime is not recognized by the Executive, courts cannot attribute any rights in state assets to the unrecognized regime. *See Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1003-04 (D.C. Cir. 1951); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944). As the Supreme Court explained in *Pink*, a court's failure to observe a recognized government's rights in property "amounts to official disapproval or non-recognition" of that government's rights and would fly "in the face of the underlying policy adopted by the United States" in recognizing that government. 315 U.S. at 232.

The U.K. judgments are the product of proceedings that did not provide notice to, and therefore did not involve the participation of, the *ad hoc* Board—the only representative of PDVSA recognized in the United States. Allowing Plaintiff to obtain recognition of those judgments in the United States for purposes of enforcing them against property owned solely by the *ad hoc* Board would be repugnant to U.S. public policy, specifically the United States' decision to recognize only the Interim Government as the legitimate government of Venezuela and the accompanying recognition of the *ad hoc* Board as the only duly appointed board of PDVSA.

This Court should thus refuse to recognize these U.K. judgments.

## CONCLUSION

For these reasons, this Court should grant Defendants' motion to dismiss.

Dated: June 27, 2023

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

*/s/ Joseph D. Pizzurro*

Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela,*
*S.A. and PDVSA Petróleo, S.A.*

21