IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANCO SAN JUAN INTERNACIONAL INC., *Plaintiff*, v. PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A., *Defendants*. | C.A. No. 1:23-CV-1263 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*

Dated: August 1, 2023

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

    I.       This Case Must Be Dismissed for Insufficient Service of Process and Lack of Personal Jurisdiction under the FSIA ...............................................................2

            A.      Plaintiff Failed to Serve the PDVSA *ad hoc* Board, the Only Entity with Standing to Represent PDVSA in U.S. Proceedings ..........................3

            B.      There Is No "Special Arrangement" on Service of Process in the United States ................................................................................................5

            C.      Actual Notice Is Insufficient Without a Permissible Method of Service on the Correct Entity ........................................................................8

    II.      This Case Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA ..................................................................................................9

    III.     This Case Should Be Dismissed for Failure to State a Claim................................11

CONCLUSION....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Pg.**

**Cases**

*Abelesz v. Magyar Nemzeti Bank*,
   692 F.3d 661 (7th Cir. 2012) .................................................................................................. 10

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
   2023 U.S. Dist. LEXIS 50887 (D.D.C. Mar. 22, 2023) ............................................................ 12

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
   788 F. 3d 1329 (11th Cir. 2015) .............................................................................................. 10

*Bank of Montreal v. Kough*,
   612 F.2d 467 (9th Cir. 1980) .................................................................................................. 12

*Banneker Ventures, LLC v. Graham*,
   798 F.3d 1119 (D.C. Cir. 2015) .............................................................................................. 12

*Berkowitz v. Republic of Costa Rica*,
   288 F. Supp. 3d 166 (D.D.C. 2018) .......................................................................................... 5

*Chiejina v. Fed. Republic of Nigeria*,
   No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675 (D.D.C. Aug. 23, 2022) .......................... 5

*Comm'ns Imp. Exp., S.A. v. Republic of the Congo & Caisse Congolaise
   d'Amortissement's*,
   118 F. Supp. 3d 220 (D.D.C. 2015) ........................................................................................ 12

*Connors v. Tanoma Mining Co.*,
   953 F.2d 682 (D.C. Cir. 1992) .................................................................................................. 7

*Cont'l Transfert Technique Ltd. v. Nigeria*,
   697 F. Supp. 2d 46 (D.D.C. 2010) .......................................................................................... 13

*Enron Nig. Power Holding, Ltd. v. Fed. Republic of Nig.*,
   225 F. Supp. 3d 18 (D.D.C. 2014) ........................................................................................ 5, 6

*Greer v. Bd. of Trs. of the Univ. of the D.C.*,
   113 F. Supp. 3d 297 (D.D.C. 2015) ........................................................................................ 12

*Guaranty Trust Co. v. United States*,
   304 U.S. 126 (1938) .................................................................................................................. 4

*Harris Corp. v. National Iranian Radio & Television*,
   691 F.2d 1344 (11th Cir. 1982) ................................................................................................ 8

*In re Inslaw, Inc.*,
   Adversary Proceeding No. 86-0069, 1988 Bankr. LEXIS 2727
   (D.C. Bankr. Jan. 25, 1988) ............................................................................................... 7

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) ............................................ 1, 4

*Kass v. William Norwitz Co.*,
   509 F. Supp. 618 (D.D.C. 1980) ........................................................................................ 7

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
   188 F.2d 1000 (D.C. Cir. 1951) ......................................................................................... 4

*Laufer v. Westminster Brokers, Ltd.*,
   532 A.2d 130 (D.C. App. 1987) ....................................................................................... 13

*Library of Cong. v. Shaw*,
   478 U.S. 310 (1986) ........................................................................................................ 10

*Louis Dreyfus Comm. Suisse, SA v. Fin. Software Sys., Inc.*,
   703 F. App'x 79 (3d Cir. 2017) ......................................................................................... 12

*Magness v. Russian Fed'n*,
   247 F.3d 609 (5th Cir. 2001) ............................................................................................. 8

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
   874 F.3d 604 (9th Cir. 2017) ........................................................................................... 13

*Newland v. Aurora Loan Servs., LLC*,
   806 F. Supp. 2d 65 (D.D.C. 2011) ................................................................................... 12

*OI European Grp. B.V. v. Republic of Venezuela*,
   No. 23-1647, 2023 U.S. App. LEXIS 17123 (3d Cir. July 7, 2023) .................................... 3

*Orange Middle E. & Afr. v. Republic of Eq. Guinea*,
   No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147 (D.D.C. May 18, 2016) ................... 5

*PDVSA U.S. Litig. Trust v. Lukoil Pan Ams. LLC*,
   65 F.4th 556 (11th Cir. 2023) ............................................................................................ 4

*Pfizer, Inc. v. Government of India*,
   434 U.S. 308 (1978) .......................................................................................................... 4

*Republic of Panama v. Air Panama Internacional, S.A.*,
   745 F. Supp. 669 (S.D. Fl. 1988) ...................................................................................... 4

*Republic of Panama v. Citizens & Southern International Bank*,
   682 F. Supp. 1544 (S.D. Fl. 1988) .................................................................................... 4

*Republic of Panama v. Republic Nat'l Bank*,
  681 F. Supp. 1066 (S.D.N.Y. 1988) .................................................................................. 4

*Segar v. Mukasey*,
  508 F.3d 16 (D.C. Cir. 2007) ............................................................................................ 7

*Sherer v. Construcciones Aeronauticas, S.A.*,
  987 F.2d 1246 (6th Cir. 1993) .......................................................................................... 8

*The Maret*,
  145 F.2d 431 (3d Cir. 1944) ............................................................................................. 4

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994) ........................................................................................... 8

*United States v. Belmont*,
  301 U.S. 324 (1937) ......................................................................................................... 4

*United States v. Bolton*,
  496 F. Supp. 3d 146 (D.D.C. 2020) ................................................................................. 6

*United States v. Pink*,
  315 U.S. 203 (1942) ......................................................................................................... 4

*United States v. Throckmorton*,
  98 U.S. 61 (1878) ........................................................................................................... 13

*Velidor v. L/P/G Benghazi*,
  653 F.2d 812 (3rd Cir. 1981) ........................................................................................... 9

*Whitehead v. CBS/Viacom, Inc.*,
  221 F.R.D. 1 (D.D.C. 2004) ............................................................................................. 8

*World Wide Minerals v. Republic of Kazakhstan*,
  296 F. 3d 1154 (D.C. Cir. 2002) .................................................................................... 10

*Zivotofsky v. Kerry*,
  576 U.S. 1 (2015) ............................................................................................................. 4

**Statutes and Rules**

28 U.S.C. § 1330(b) ................................................................................................................ 2

28 U.S.C. § 1608 .................................................................................................................... 8

28 U.S.C. § 1608(b) ............................................................................................................... 2

28 U.S.C. § 1608(b)(1) ..................................................................................................... 3, 5

28 U.S.C. § 1608(b)(2) ......................................................................................................... 9

D.C. Code § 15-364(b)(2) .................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 11

**Other Authorities**

3 Ved P. Nanda & David K. Pansius, LITIGATION OF INTERNATIONAL DISPUTES IN U.S.
  COURTS § 20:15 (2d ed. 2009) .................................................................................. 13

*Banco San Juan Internacional, Inc. v. Petróleos de Venezuela, S.A.*,
  [2020] EWHC 2145 (Comm) (July 31, 2020) ............................................................. 6

Defendants respectfully submit this Reply in Support of their Motion to Dismiss.[1]

## INTRODUCTION

It is stunning that Plaintiff, who is represented by well-known U.S.-based international law firms, does not deny the accusation that its scheme all along was to keep the *ad hoc* Board in the dark while it obtained judgments in the United Kingdom with the intent of bringing those judgments to the United States in an effort to execute on property owned and controlled solely by the *ad hoc* Board. This devious plan may have worked in the United Kingdom, where Plaintiff and its counsel also kept the courts in the dark about their scheme, but it should be categorically rejected by this Court.

Unlike other plaintiffs currently seeking to attach and execute on the PDVH shares, Plaintiff commenced the U.K. actions after the United States had recognized the Interim Government and derecognized the Maduro regime, and after the Delaware courts had ruled that the *ad hoc* Board was the only entity with any cognizable interest in the PDVH shares. *See Jiménez v. Palacios*, 250 A.3d 814, 829-30 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020). These are matters of U.S. law, not merely political or diplomatic events as Plaintiff suggests. If Plaintiff wanted to obtain a judgment against PDVSA that it could satisfy by attaching and executing on the PDVH shares, which are indisputably owned and controlled solely by the *ad hoc* Board, it could and should have served the PDVSA *ad hoc* Board in the U.K. actions and in these proceedings as well. Yet Plaintiff does not allege that it ever provided notice of this case or the underlying U.K. actions to the PDVSA *ad hoc* Board—and what's even more astounding is that Plaintiff does not deny that it failed to do so on purpose. Rather, Plaintiff has now confirmed that it deliberately ignored these legal developments and proceeded both in the U.K.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in Defendants' Motion. (ECF 53).

actions and in these proceedings as if there were no legal distinction between the Maduro regime and the *ad hoc* Board, and as if the Maduro-dominated "PDVSA" had any interest in or standing to defend against attachment of the PDVH shares.  No foreign judgments rendered in these circumstances can be enforced in the United States, whether because of lack of personal jurisdiction in the foreign court, extrinsic fraud, deprivation of due process, a violation of U.S. public policy or all of those grounds combined.  These defenses are apparent on the face of the pleadings and so the U.K. judgments may not be enforced as a matter of law under the D.C. Recognition Act.  This Court should thus dismiss the Complaint for failure to state a claim.

But this Court need not reach the merits of the claims at this stage.  Given that Plaintiff does not allege any facts establishing that it notified, let alone actually served, the *ad hoc* Board in these proceedings, this Court should dismiss the Complaint for insufficient service of process and lack of jurisdiction under the FSIA.

## ARGUMENT

### I. This Case Must Be Dismissed for Insufficient Service of Process and Lack of Personal Jurisdiction under the FSIA

Plaintiff does not deny that it never attempted to serve (or even notify) PDVSA's *ad hoc* Board in these proceedings, even though Plaintiff does not and cannot dispute that only the *ad hoc* Board has standing to appear on behalf of Defendants in U.S. courts and is the only owner of the property against which Plaintiff ultimately seeks to execute its judgments.  That fact alone warrants dismissal of this case for insufficient service of process and lack of personal jurisdiction under the FSIA.  28 U.S.C. §§ 1330(b), 1608(b).  Still, Plaintiff insists on pretending that the *ad hoc* Board does not exist and argues that service was made on PDVSA in Caracas through Maples & Calder pursuant to provisions in the underlying Credit Agreements.  According to

2

Plaintiff, those provisions constitute a "special arrangement" for service of process under 28 U.S.C. § 1608(b)(1). That argument also fails on its face as a matter of law.

### A. Plaintiff Failed to Serve the PDVSA *ad hoc* Board, the Only Entity with Standing to Represent PDVSA in U.S. Proceedings

While Plaintiff misleadingly tells this Court that PDVSA received actual notice of this lawsuit and supposedly "acknowledged receipt" of service, Pl.'s Br. 5, Plaintiff's own pleadings and supporting documents establish that it purported to serve only persons affiliated with the Maduro regime in Venezuela. Plaintiff does not deny this fact. But service on Maduro representatives does not constitute service on PDVSA in the United States, where only the *ad hoc* Board has standing to speak and act on behalf of PDVSA in U.S. courts.

Given that Plaintiff's ultimate litigation objective is to attach and execute on the PDVH shares and given that Plaintiff knew that those assets were owned only by the PDVSA *ad hoc* Board, it is inexcusable that Plaintiff deliberately chose not to provide any notice of this case to the *ad hoc* Board.[2] Plaintiff attempts to portray the difference between the Maduro regime and the Interim Government as resulting in a change in company management in the United States. That is a gross oversimplification and mischaracterization of the events. This is not merely a case of "management chang[ing] hands"—this is a situation where the U.S. Executive derecognized the Maduro regime and recognized the Interim Government as the only legitimate government of Venezuela, and that recognition conclusively decided the issue of which entity owns PDVSA's U.S.-based property and can appear in U.S. courts to defend that property. That entity is solely the PDVSA governed by the *ad hoc* Board. *See PDVSA U.S. Litig. Trust v.*

---

[2] The Third Circuit's recent decision in *OI European Grp. B.V. v. Republic of Venezuela*, No. 23-1647, 2023 U.S. App. LEXIS 17123 (3d Cir. July 7, 2023) is not to the contrary. That case had nothing to do with service of process nor did it hold that service of process on members of the Maduro regime in Venezuela could constitute service on PDVSA in the United States.

3

*Lukoil Pan Ams. LLC*, 65 F.4th 556, 562-63 (11th Cir. 2023); *Jiménez*, 250 A.3d at 819-20, 829-30.

As the Supreme Court has repeatedly held, the U.S. Judiciary is bound by and cannot interfere with the Executive Branch's recognition of foreign governments. *See Zivotofsky v. Kerry*, 576 U.S. 1, 18-19 (2015); *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 319-20 (1978); *United States v. Pink*, 315 U.S. 203, 229 (1942); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137-38 (1938). Only a recognized government can be deemed to have any rights in the U.S. assets of a state-owned enterprise, *see Pink*, 315 U.S. at 231-32, 234; *United States v. Belmont*, 301 U.S. 324, 328-30 (1937), and where a foreign regime is not recognized by the Executive, courts cannot attribute any rights in state assets to the unrecognized regime. *See Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1003-04 (D.C. Cir. 1951); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944); *Republic of Panama v. Republic Nat'l Bank*, 681 F. Supp. 1066, 1068, 1070-71 (S.D.N.Y. 1988); *Republic of Panama v. Citizens & Southern International Bank*, 682 F. Supp. 1544, 1550 (S.D. Fl. 1988); *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 670-72 (S.D. Fl. 1988). A court's failure to observe a recognized government's rights in property "amounts to official disapproval or non-recognition" of that government's rights and would fly "in the face of the underlying policy adopted by the United States" in recognizing that government. *Pink*, 315 U.S. at 232.

The U.S. government's decision to recognize the Interim Government therefore determines the issue and establishes that it was the *ad hoc* Board of PDVSA that Plaintiff needed to serve in these proceedings. Plaintiff's intentional failure to do so warrants outright dismissal for insufficient service of process and lack of personal jurisdiction under the FSIA.

**B.     There Is No "Special Arrangement" on Service of Process in the United States**

Having no excuse for failing to serve the only duly appointed representatives of PDVSA in the United States, Plaintiff insists that service on the illegitimate "PDVSA" in Venezuela was sufficient service under the FSIA. Even taking Plaintiff's argument on its face (which PDVSA strongly opposes), the service provisions in the Credit Agreements upon which Plaintiff relies do not provide for service in U.S. proceedings and therefore, as a matter of law, do not constitute a "special arrangement" for service of process under section 1608(b)(1) of the FSIA.

Plaintiff asserts that the Credit Agreements provide a mechanism to serve PDVSA in U.S. proceedings because they do not explicitly limit service to "proceedings" in England. Pl.'s Br. 17-18. That argument turns the "special arrangement" provision on its head. There can be no dispute that, to constitute a "special arrangement" for service of process under section 1608(b)(1), a contract must unequivocally provide for service on the foreign defendant in the particular U.S. court proceeding at issue. *See Chiejina v. Fed. Republic of Nigeria*, No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675, at *7-8 (D.D.C. Aug. 23, 2022); *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 173 (D.D.C. 2018); *Orange Middle E. & Afr. v. Republic of Eq. Guinea*, No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147, at *8 (D.D.C. May 18, 2016); *Enron Nig. Power Holding, Ltd. v. Fed. Republic of Nig.* ("*Enron*"), 225 F. Supp. 3d 18, 22-23 (D.D.C. 2014). Plaintiff quarrels with these cases by arguing that some of them deal with notice provisions rather than service provisions, but Plaintiff does not and cannot dispute that these courts consistently held that a special arrangement must specifically encompass service in U.S. proceedings. *See, e.g., Chiejina*, 2022 U.S. Dist. LEXIS 152675, at *7-8 ("[N]or is there any reason to find that the provision specifically covers the service of documents stemming from confirmation proceedings in the U.S. courts.").

5

Here, both Credit Agreements explicitly provide only for "service of process in England," without referring to proceedings anywhere else. (ECF 54, Ex. C at § 9.12(c); ECF 54, Ex. D at § 10.12(c)).  As Defendants explained in their opening brief, the *Enron* case is on all fours because it rejected the notion that a contract specifying foreign jurisdictions for service of process could be read to encompass service of process in U.S. proceedings.  While Plaintiff attempts to distinguish *Enron* by arguing that the contract there specifically mentioned "proceedings" in England and Wales, Pl.'s Br. 17, the absence of that word in the service provisions in the Credit Agreements is immaterial because what matters is that these agreements limit the service of process provision to one jurisdiction.  As the court in *Enron* held, "[t]he parties' inclusion of a specific provision for legal service only in another jurisdiction [*i.e.*, England] indicates that they did not intend to create a 'special arrangement for service' for proceedings in the United States." 225 F. Supp. 3d at 23; *see also United States v. Bolton*, 496 F. Supp. 3d 146, 156 (D.D.C. 2020) ("Under the doctrine of expressio unius est exclusio alterius, it is well-settled that '[w]here certain things are specified in detail in a contract, other things of the same general character relating to the same matter are generally held to be excluded by implication.'").  That conclusion is equally applicable here.  Indeed, even the U.K. court in the underlying proceeding read the Credit Agreements as providing that "PDVSA is obliged forthwith to appoint a process agent to be an authorised agent *for service of proceedings in England*."  *Banco San Juan Internacional, Inc. v. Petróleos de Venezuela, S.A.*, [2020] EWHC 2145 (Comm) (July 31, 2020) at ¶ 4 (emphasis added).[3]

---

[3] Plaintiff's argument that PDVSA is estopped from challenging service of process because the U.K. courts found that service in the U.K. proceedings was made in accordance with the Credit Agreements is frivolous.  The U.K. courts did not rule (and could not have ruled) on whether the service provisions applied to future proceedings in the United States, or whether service was proper under U.S. law, namely the FSIA.  Moreover, the PDVSA *ad hoc* Board was never

Plaintiff argues that "courts will not displace the terms of [a] contract and impose some other duties not chosen by the parties" and that "[p]lain and unambiguous contract language cannot be rewritten by the Court." Pl.'s Br. 17 (internal citations omitted). But it is Plaintiff who is asking the Court to re-write or read additional jurisdictions into the service of process provisions. The language of those provisions is clear. They provide for "service of process in England" only. Under the principle set out in Plaintiff's own cases, this Court should not re-write those provisions to encompass service of process in proceedings in the United States.

Indeed, in other provisions in the Credit Agreements, the parties specifically referred to "any jurisdiction." (ECF 54, Ex. C §§ 5.21, 9.12(d); ECF 54, Ex. D §§ 5.21, 10.12(d)). If the parties wished for the service provision to cover service outside of England, they knew how to say so by using the phrase "any jurisdiction"—but they chose not to do so. *See Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007) (noting "the Court must read 'the contract as a whole, interpreting all parts of the contract together,'[] and []must 'give[] all provisions a reasonable, lawful, and/or effecting meaning.'") (citing *Kass v. William Norwitz Co.*, 509 F. Supp. 618, 624 (D.D.C. 1980)); *In re Inslaw, Inc.*, Adversary Proceeding No. 86-0069, 1988 Bankr. LEXIS 2727, at *254 (D.C. Bankr. Jan. 25, 1988) (noting "a contract is read as a harmonious whole which gives a reasonable, lawful and effective meaning to the whole," and that "an interpretation that leaves portions of the instrument superfluous is disfavored") (internal citation omitted).

---

notified of the U.K. proceedings and thus never had any opportunity to litigate any issues in those proceedings. Thus, the U.K. courts' rulings have no collateral effect in this case. *See Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C. Cir. 1992) ("A party that has once litigated a factual or legal issue and lost may be precluded from relitigating the same issue in a subsequent proceeding … if three conditions are met: First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial. Third, preclusion in the second trial must not work an unfairness.") (emphasis omitted).

Accordingly, those provisions do not constitute a "special arrangement" for service in U.S. proceedings under the FSIA.

C. **Actual Notice Is Insufficient Without a Permissible Method of Service on the Correct Entity**

Plaintiff attempts to justify its deficient service by arguing that service can be "technically faulty" so long as the foreign instrumentality received actual notice. Pl.'s Br. 18-19. Contrary to Plaintiff's contention, actual notice is insufficient when no permissible method of service was even attempted, let alone when service was not even attempted on the correct entity, *i.e.*, the PDVSA *ad hoc* Board, the widely-known, sole-owner of the property which Plaintiff is hoping to reach. *See Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 2-3 (D.D.C. 2004) (finding that "notice alone 'cannot cure an otherwise defective service'" and dismissing complaint where plaintiff served an improper entity). At the very least, service under section 1608 needs to be "reasonably calculated to give actual notice" to the actual defendant. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994); *Magness v. Russian Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001). Transmission of service papers to the Maduro-controlled headquarters of PDVSA in Caracas is in no way reasonably calculated to give notice to the owner of the PDVH shares in the U.S., *i.e.*, the *ad hoc* Board.

The cases upon which Plaintiff relies do not involve such a grave error—they involve attempts to serve the correct entity and only minor deficiencies in otherwise permissible methods of service. *See, e.g., Transaero*, 30 F.3d at 153 (citing *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246, 1250 (6th Cir. 1993), which involved a failure to provide a translation of the summons and complaint, for the proposition that service can be "technically faulty"); *Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344, 1352, n.15 (11th Cir. 1982) (finding service adequate where plaintiff failed "to follow precisely those steps in § 1608" but

8

where plaintiff's service attempts were made on the correct entity); *Velidor v. L/P/G Benghazi*, 653 F.2d 812, 821 (3rd Cir. 1981) (finding service sufficient under section 1608(b)(2) where plaintiff served the ship's master, who "[u]nder maritime law … is regarded as the agent and representative of the owner" of the ship). This case law does not provide cover for Plaintiff's outright failure to serve the correct entity or its use of an impermissible method of service.

Plaintiff argues that since PDVSA "posses[es] sophisticated knowledge of the U.S. legal system" and maintains "multinational, sophisticated legal counsel" who happened to conduct a "routine search of the court's dockets," PDVSA does not need to have been actually served or provided proper notice to be hauled into court. Pl's Br. 19. That is an absurd proposition. No amount of "sophisticated knowledge" can substitute for proper service or waive the obligation to serve the correct defendant using a permissible method of service. To find otherwise would require PDVSA to maintain constant, world-wide vigilance to see if any cases have been filed in any docket so that PDVSA can defend its rights, even if PDVSA was never actually served or provided proper notice in those cases. This is not and cannot be the law.

Since Plaintiff has failed to serve Defendants in accordance with the requirements of the FSIA, this action should be dismissed for insufficient service of process and lack of personal jurisdiction under the FSIA.

## II.   This Case Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA

Given Plaintiff's clear and deliberate disregard for its obligation to serve the correct Defendants in the U.K. proceedings and in this action, Plaintiff should not be permitted to invoke the Credit Agreements' sovereign-immunity waiver provisions.

Plaintiff does not dispute that "explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign.'" *World Wide Minerals v. Republic of Kazakhstan*, 296 F.

9

3d 1154, 1162 (D.C. Cir. 2002) (quoting *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986)); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F. 3d 1329, 1338 (11th Cir. 2015) (same); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 670 (7th Cir. 2012) (similar). Nor does it have a direct response to PDVSA's argument that any waivers in the Credit Agreements should not be construed as broadly waiving the immunity of the PDVSA governed by the *ad hoc* Board.

Rather, Plaintiff's only argument is that "PDVSA's *ad hoc* Board is not a party to this suit." Pl.'s Br. 28. But that is precisely the problem. The only entity that is PDVSA in the United States is the entity governed by the *ad hoc* Board, and yet Plaintiff is deliberately trying to avoid litigating with that entity while at the same time hoping to attach and execute on assets owned and controlled solely by that entity. PDVSA could not have intended to waive sovereign immunity for judgments obtained *ex parte*, and the waiver exception should not be read to encompass such a situation. Having made the choice to litigate only with the Maduro PDVSA, Plaintiff should be estopped from arguing that the PDVSA *ad hoc* Board waived its immunity and from pursuing the PDVSA *ad hoc* Board's assets. Plaintiff can take its judgments against the Maduro PDVSA to some jurisdiction where that entity owns property. It cannot bring them to the United States and seek to enforce them against property of the *ad hoc* Board.

Furthermore, Plaintiff had obligations under the Credit Agreements, namely, to properly serve the correct PDVSA, which it has not upheld. Plaintiff cannot now get the benefit of its bargain (the alleged waivers) while eschewing its own responsibilities under the same agreements. Plaintiff cites no case to the contrary. In short, the waiver provisions should not be construed so broadly as to reward Plaintiff for intentionally sidelining the *ad hoc* Board.

**III.     This Case Should Be Dismissed for Failure to State a Claim**

As a preliminary matter, Defendants' motion to dismiss should not be converted into a motion for summary judgment. Defendants have not presented any factual matters outside of the pleadings. Defendant's motion to dismiss for failure to state a claim is based entirely on Plaintiff's failure to allege that it served the *ad hoc* Board in the U.K. proceedings. While Defendants submitted a declaration by a member of the *ad hoc* Board, Julian Cardenas Garcia, Mr. Cardenas merely confirms that, in fact, the *ad hoc* Board was never served in the U.K. proceedings or in these proceedings and that the individuals served by Maples & Calder are affiliated with the Maduro regime, not the legitimate, U.S.-recognized government of Venezuela—a fact that Plaintiff does not deny. (*See* ECF 36 at 6, 9-12; ECF 36-5, Ex. E at 4-5; ECF 36-6, Ex. F at 4-5; ECF 36-9, Ex. I at 4-5; ECF 36-10, Ex. J at 2, 4; ECF 36-12, Ex. L at 4-9). Nor does Plaintiff deny what is made obvious in the pleadings, *i.e.*, that it deliberately chose not to serve the *ad hoc* Board, even though its plan all along was to bring those judgments to the United States to seek attachment of and execution on the PDVH shares.

Furthermore, the United States' recognition of the Interim Government is an indisputable fact with legal significance. This Court cannot ignore that, as a matter of U.S. law, only the Interim Government's duly appointed *ad hoc* Board of PDVSA has any standing to act and speak on behalf of PDVSA in the United States and to exercise any ownership rights in PDVSA's U.S.-based property. Thus, this Court may proceed under Federal Rule 12(b)(6).[4]

Plaintiff's failure to allege that it served or even notified the proper entity in the underlying U.K. proceedings establishes the affirmative defenses for refusing to recognize the U.K. judgments under the D.C. Recognition Act, as those defenses are apparent from the

---

[4] If this Court considers it necessary to convert the 12(b)(6) motion into a motion for summary judgment, PDVSA reserves the right to seek discovery in support of its affirmative defenses.

11

pleadings.  *See Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, No. 22-cv-58 (CRC), 2023 U.S. Dist. LEXIS 50887, at *55-56 (D.D.C. Mar. 22, 2023); *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.") (internal citation omitted); *Newland v. Aurora Loan Servs., LLC*, 806 F. Supp. 2d 65, 67, 70-71 (D.D.C. 2011) (dismissing a complaint as time-barred when it was clear on the face of the complaint that the affirmative defense of statute of limitations applied); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (documents appended to complaint are part of the pleadings and evidence therein may be considered on a motion to dismiss).

      Plaintiff does not dispute that courts in the District of Columbia are required to refuse enforcement where the foreign court lacked personal jurisdiction over the defendant, rendering the judgment unenforceable under the D.C. Recognition Act.  D.C. Code § 15-364(b)(2); *see Comm'ns Imp. Exp., S.A. v. Republic of the Congo & Caisse Congolaise d'Amortissement's*, 118 F. Supp. 3d 220, 224 (D.D.C. 2015).  Nor does it dispute that personal jurisdiction in the foreign court must comport with "American principles of jurisdictional due process," and that notice on the proper defendant is a fundamental requirement of any standard of jurisdictional due process. *Comm'ns Imp. Ex.*, 118 F. Supp. 3d at 226 (quoting *Bank of Montreal v. Kough*, 612 F.2d 467, 471 (9th Cir. 1980)).  Indeed, Plaintiff agrees that, when a defendant agrees to "a forum-selection clause, … the requirement of personal jurisdiction is satisfied **unless** the defendant did not receive 'notice of the proceedings in sufficient time to enable him to defend' the lawsuit in the foreign court." *Louis Dreyfus Comm. Suisse, SA v. Fin. Software Sys., Inc.*, 703 F. App'x 79, 83 (3d Cir. 2017) (emphasis supplied).

Similarly, Plaintiff agrees that extrinsic fraud is a basis for refusing to enforce a foreign judgment, and that "'[e]xtrinsic fraud' occurs when, 'by reason of something done by the successful party to a suit' … 'the losing party [was deprived] of an adequate opportunity to present its case to the [foreign] court.'" *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 64 (D.D.C. 2010) (quoting *United States v. Throckmorton*, 98 U.S. 61, 65 (1878) and 3 Ved P. Nanda & David K. Pansius, LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 20:15 (2d ed. 2009) and citing *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 133 (D.C. App. 1987)). And there is no dispute that a due-process violation exists where the defendant was denied "fundamental fairness" in the foreign proceedings, such as by being denied the opportunity to be heard. *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617 (9th Cir. 2017).

All of Plaintiff's responses to Defendants' defenses under the D.C. Recognition Act are based on the premise that "PDVSA" was supposedly served in, had notice of, and appeared in the U.K. proceedings. But that is not what happened. Plaintiff served only the Maduro PDVSA and only the Maduro PDVSA appeared in the U.K. proceedings. Plaintiff never served and still does not purport to have even attempted service on the *ad hoc* Board, and so PDVSA was denied a full and fair opportunity to defend itself in the U.K. proceedings. As the *ad hoc* Board of PDVSA was given no notice in the underlying U.K. actions at all, let alone in sufficient time to defend the lawsuit, the U.K. court lacked personal jurisdiction over PDVSA, and PDVSA was denied fundamental fairness. And because Plaintiff deliberately opted not to notify the *ad hoc* Board as part of a calculated scheme to keep the *ad hoc* Board in the dark about Plaintiff's efforts to seek attachment and enforcement of the PDVH shares, this Court may also refuse

enforcement on the basis that the U.K. judgments are the product of extrinsic fraud because that scheme deprived PDVSA of a "adequate opportunity to present its case" in the U.K. courts.

Lastly, as explained in Defendants' opening brief (at 19-20), enforcing the U.K. judgments, which were procured by deliberately notifying only the Maduro PDVSA even though the ultimate objective was to enforce them against PDVSA's property in the United States, would be repugnant to U.S. public policy because it would undermine the Executive's exclusive power and policy for recognizing only the Interim Government as the legitimate government of Venezuela.  Therefore, the pleadings make clear that the U.K. judgments are unenforceable as a matter of law.

## CONCLUSION

For these reasons, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*

Dated: August 1, 2023